## Cumberland Telp. & Telg. Co. v. Yeiser.

(Decided December 2, 1910.)

### Appeal from Daviess Circuit Court.

1. Automobiles.—Automobiles have the right to use the highways of the State on an equal footing with other vehicles, but drivers of these machines must observe the duties imposed upon them by statute, and, in addition, exercise ordinary care for the safety of travelers on the highway; and if they fail to do so, and an accident occurs as the proximate cause of such failure, the injured party may recover damages.

2. Contributory Negligence.—Where the driver of a frightened horse attempts to pass an automibile that stopped when the fright of the horse was discovered, he will be guilty of such contributory negligence as will defeat a recovery, unless the evidence shows that there was no other reasonable course that he could pursue, and that the negligence of the driver of the automobile placed him in the position of peril.

3. Application of Principle to Facts.—Appellee, who was driving a restive horse, turned off the road for the purpose of quieting his horse, and about the same time the driver of the automobile discovering the fright of the horse, stopped the machine some distance away. The horse becoming more unmanageable, the appellee undertook to force him by the standing machine, and in

the attempt was thrown out of the vehicle. Held, that he could not recover.

C. M. FINN for appellant.

C. W. WELLS, R. S. TODD, and R. A. MILLER for appellee.

OPINION OF THE COURT BY JUDGE CARROLL—Reversing.

The horse appellee was driving became frightened at an automobile in charge of the employes of the appellant company, and as a result he was thrown or fell out of a two-wheeled cart in which he was riding. To recover damages for injuries sustained by the fall, he brought this suit, and upon a trial obtained a judgment for $1,755.00.

The appellee insists that the trial court should have directed a verdict in its favor, and this question we will first consider. The facts and circumstances surrounding the injury as we gather them from the record are substantially as follows: A number of farmers, including the appellee, who had been in attendance at a tobacco meeting at Owensboro were returning home in the afternoon. A number of them were in buggies, and some of these buggies were close together; others a short distance apart. Appellee was driving alone a high spirited and restive horse to a two-wheeled cart. Shortly before reaching the place where the accident occurred, appellee requested the occupants of some of the buggies that were immediately ahead of him to get out of the way, as he wanted to go by, and thereupon they gave him room and he passed them. Driving a short distance behind other buggies he discovered that his horse was frightened, but did not know at the moment what the cause was, but almost immediately discovered that the horse was frightened by an automobile that was approaching from the opposite direction. About this time appellee came to an offset in the road, or a place where the fence had been set back some fifteen or eighteen feet from the road line, and he drove his horse into this offset, which was about sixty feet long, for the purpose as he states of quieting him and keeping out of the way of other vehicles. At or about the time that appellee turned his horse into this offset, the automobile stopped by the side of the road near the other end of the offset, and some one hundred feet from where appellee had turned in. Finding that he could not control his horse, as he

had become more unmanageable and was jumping up on the fence that ran along the line of the offset, he concluded that he would get back on the road and undertake to drive his horse by the automobile that had not moved from the time it stopped. When he got his horse back on the road, and was going in the direction of the automobile and just before reaching the place where it was standing, his horse ran into a buggy that was also attempting to go by the automobile, and in the collision the buggy was turned over and the appellee thrown out of the cart in which he was riding, and dragged probably one hundred feet before his horse could be stopped. The evidence that the automobile came to a stop by the side of the road some one hundred feet from where appellee drove into the offset and then turned out on the road, is practically uncontradicted. But there is conflict in the evidence as to whether the motor of the automobile was shut off when it was stopped. Some of the witnesses say that when the automobile stopped the motor stopped running; others that it did not, and others did not know whether it stopped or not. A number of witnesses who were present testified to what occurred, but seeing things as they did from different standpoints, there is much conflict in their evidence. But, upon the material fact, that appellee attempted to drive by the automobile after it had stopped, and in this attempt received the injuries, there can be no doubt—in fact, it is conceded by his counsel. The question then is, was appellee's conduct in attempting to pass the automobile under the circumstances narrated, the proximate cause of the injury? Stating the case in the most favorable light for appellee, it appears that the automobile did not stop as soon as the fright of his horse was or in the exercise of ordinary care should have been discovered by the driver of the machine, and that appellee was induced to leave the offset into which he had driven by the apprehension that his horse would get crippled in the fence, or that in rearing and plunging he would get hurt. But, assuming that the automobile did not stop as soon as the fright of the appellee's horse was or should in the exercise of ordinary care have been discovered, and further assuming that the motor was not stopped, the fact remains that appellee was not injured until he attempted to drive his horse by it. Whether he would have been injured if he had remained in the offset, or if he had attempted to get out of his cart, or if he had not endeavored to pass the au-.

tomobile, is problematical. He might or might not have been hurt if he had done either of these things. But certain it is that no injury befell him until he attempted to drive his horse by the machine. Under these circumstances, it is insisted by counsel for appellee that although he was injured in an effort to force his horse by the standing machine, that this was not such contributory negligence as would defeat a recovery. In support of his contention, it is said that he had been placed in a position of peril, and forced to go into the offset by the failure of the driver of the automobile to give warning of its approach, and so his acts are not to be measured by the standard applied in ordinary cases. The rule of law invoked by counsel has been applied by this court in South Covington & Cin. Ry. Co. v. Ware, 84 Ky., 267; Middlesboro R. Co. v. Stallard, 24 Ky. Law Rep., 1666, as well as other cases, and is generally recognized as sound by courts and text writers on the subject of negligence. But we do not think this rule is applicable to the facts of this case, as there is no evidence that the failure to sound the horn contributed in any degree to the predicament in which appellee was placed by the fright and bad conduct of his horse. It is true that section 2739g of the Kentucky Statutes relating to motor vehicles provides in part in subsection 3 that:

"Upon approaching a person walking in the roadway of a public highway, or a horse or other draft animals, being ridden or driven thereon, a person operating a motor vehicle shall give warning of its approach by signalling with a horn, bell or other device not calculated to frighten such animal, and use every reasonable precaution to insure the safety of such person or animal, and, in the case of horses or other draft animals, to prevent frightening the same. * * *"

And we have held that the failure to give this statutory warning would be *per se* negligence, if injury resulted from it. National Casket Co. v. Powar, 137 Ky., 156. The purpose of the statute was to warn travelers of the approach of an automobile, so that they might have an opportunity to take such means as the exigencies of the situation demanded to protect themselves from injury or fright. But, unless it is shown that the failure to give this warning contributed to or brought about the injury, then the non-observance of this regulation alone cannot be relied on as actionable negligence that will warrant a recovery in damages. For, in every case there must be some proven connection between the negligence com-

plained of and the injury. It matters not how negligent a person may be, his negligence unless the injury complained of was the proximate result of it, will not authorize a recovery in damages. Conway v. L. & N. R. Co., 135 Ky., 229. Here, there is no evidence that the failure to give this warning had anything to do with the fright of appellee's horse, or the injury that was sustained by him. If appellee had remained in the offset and had been thrown out of his vehicle, or if he had turned or attempted to turn and drive his horse in the opposite direction from the automobile and in this effort had received the injuries complained of, we are of the opinion that there was sufficient evidence in his behalf to take the case to the jury upon the theory that the driver of the automobile was negligent in failing to stop as soon as he discovered that appellee's horse was frightened, and in failing under the circumstances to stop the motor at the time he stopped the machine. But, when appellee made the effort to force his unmanageable horse by the machine that was standing on the side of the road, he took the risk of accident and injury into his own hands, and must answer the consequences of his own folly or recklessness. His conduct was the proximate cause of his injury, and the driver of the automobile should not be made to suffer for his rash act. Automobiles have the right to use the highways of the State on an equal footing with other vehicles. Webb v. Moore, 136 Ky., 708. But they frighten many horses that the ordinary vehicles in use do not frighten, and so it was considered advisable by the General Assembly to enact a statute regulating their use of highways and imposing certain duties to be performed for the safety and protection of other travelers. But, except as to a few specific requirements, it is doubtful if the statute imposes any greater duty upon drivers of automobiles than would be put upon them by the general principles of the law. Indeed we might safely say that the statutes of 1904 and 1910, except in matters of detail, are largely declaratory of what the law was before they were written, and the duties of automobile drivers are not limited to those mentioned in the statute. If the driver should comply with all the requirements of the statute, he might yet be liable for the failure to exercise ordinary care to avoid injury to another traveler on the highway. When the driver of an automobile sees, or in the exercise of ordinary care should see, that a horse he is approaching —whether he is going in the same or opposite direction

—is frightened by the machine, he should bring it to a full stop  if this can be done with due regard for the safety of its occupants, and in the exercise of ordinary care is necessary to avoid injury.  And if the exercise of ordinary care requires it, the motor should be stopped, and the failure to do either of these things, when ordinary care requires they should be done, would be actionable negligence, if it was shown that the injury resulted as the proximate cause thereof.  But, in this case the speed at which the automobile was running before it stopped, although we may add there is no evidence that it exceeded the statutory rate, or the failure to stop the motor or sound the horn, did not cause the  injuries  of which appellee complains.  After a careful consideration of the record, we think the trial court should have directed the jury to return a verdict in favor of appellant, defendant below.  

Wherefore, the judgment is reversed with directions for a new trial in conformity with this opinion.