## Melville v. Rollwage.

(Decided October 20, 1916.)

### Appeal from Jefferson Circuit Court (Common Pleas Branch, Second Division).

1. Municipal Corporations—Use of Street—Action for Injury—Question for Jury.—In an action for damages sustained by being knocked down and run over by an automobile, evidence examined and held sufficient to show negligence in operating the machine and to require submission of the case to the jury; also to sustain their verdict in favor of plaintiff.

2. Municipal Corporations—Use of Streets—Automobiles.—The fact that the driver of an automobile received a signal from a traffic officer to proceed across an intersection, did not relieve him of the duty to give proper warning to pedestrians crossing in his path and to so regulate the speed of the machine as would prevent, by the use of ordinary care on his part, injury to pedestrians on the street or crossing.

3. Municipal Corporations—Use of Streets by Pedestrians.—Where a pedestrian in crossing a street was obstructed by a street car after leaving the pavement, it was not negligence per se for her to stop in the middle of the street such time as would enable the car, about to start in obedience to a later signal of the officer, to get out of her way.

4. Municipal Corporations—Use of Streets—Action for Injury—Instructions.—Where the provisions of a city traffic ordinance are but declaratory of the common law as to care to be observed by pedestrians and automobilists on streets and crossings, and instructions given stated such requirements and did not conflict with such ordinance, it was not error to refuse instructions referring to the provisions of the ordinance as defining the measure of care required.

5. Damages—Measure of Damages—Instructions.—Where, from the negligent operation of an automobile by its owner, resulting in a collision with plaintiff, she sustained a fractured rib, which was torn loose; had to submit to an operation to secure a movable kidney, and there was evidence to the effect that such condition resulted from the collision complained of and that her injuries were of a permanent nature, an instruction on the measure of damages which allowed recovery for permanent injuries, was not error.

**6.** Damages—When Not Excessive.—Where plaintiff sustained a frac-
tured rib, various cuts and bruises about the body, was confined
to her bed for three weeks or more, and had to submit to an opera-
tion to secure a movable kidney, and where her hospital and
doctors' bills amounted to $375.00, a verdict awarding her $1,250.00
altogether was not excessive.

HUBBARD & HUBBARD for appellant.

WILLIAMS & WALKER, EDWARDS, OGDEN & PEAK and H. O.
WILLIAMS for appellee.

OPINION OF THE COURT BY JUDGE SETTLE—Affirming.

About five o'clock p. m., October 30, 1914, the appel-
lee, Minnie Rollwage, was knocked down and injured at
the crossing of Fourth and Walnut streets in the city
of Louisville by an automobile owned and operated by
the appellant, Frank Melville. Shortly thereafter she
brought this action to recover of him damages for the
injuries sustained from the collision in question, alleg-
ing in the petition that they were caused by appellant's
negligent operation of the machine. The latter answer-
ed, traversing the averments of the petition and alleg-
ing contributory negligence on the part of appellee. The
trial resulted in a verdict and judgment in favor of ap-
pellee for $1,250.00. Appellant complains of the judg-
ment, hence this appeal.

It appears from the evidence that appellee, a young
lady twenty-five years of age, was going south on the
west side of Fourth street, in company with her sister
and another young lady, and that in crossing Walnut
street the appellant, who was going west on Walnut
street in his automobile, ran into the appellee, knocked
her down, ran one wheel of the machine over her body
and knocked the two young ladies with her down as
well.

Fourth street runs north and south and Walnut street
east and west, the Seelbach hotel being the southwest
corner, Selman's mercantile building on the northwest
corner, the Stewart Dry Goods Company's building on
the southeast corner and the United Cigar store on the
northeast corner. There are double lines of street car
tracks on both Walnut and Fourth street. Not only is
every building in this vicinity devoted to business pur-
poses, but the intersection of the streets at this point
is notoriously the most congested and busiest intersec-

tion in Louisville. The city maintains at this intersection. a policeman or traffic officer, who constantly stands on duty directly in the middle of the street. He uses a whistle, one sound of which indicates that vehicles and persons going east and west, or on Walnut street, shall have the right of way over vehicles and persons moving north and south, or on Fourth street. Two blasts of the whistle indicate that vehicles and persons moving north and south, on Fourth street, shall have the right of way. At the time of the collision in question appellee and her two companions were standing in the space between the two Walnut street car tracks, to which point they had proceeded in the attempt to cross Walnut street, but the stop made by them was necessary because an eastbound Walnut street car was standing over the foot crossing immediately in front of them discharging and taking on passengers. The traffic officer had just given the signal for the car to pass over Fourth street and on east, the conductor had rung the car bell for the car to start and it was in the act of starting when appellee and her companions were struck by the automobile, coming from the east and going at a speed of ten or twelve miles an hour, without slowing up for the Fourth street intersection or giving any warning whatever. After being momentarily halted by the street car, appellee's attention was directed to the car, although before she left the pavement in her rear she looked east on Walnut street without seeing appellant, whose automobile was then somewhere on the east or opposite side of Fourth street and not in her view.

The foregoing facts were shown by the testimony of appellee, her two companions and other witnesses. Among the latter was J. W. Raymond, the traffic officer, whose position between the point of the accident and the approaching automobile enabled him, better than all others, to see what occurred. His description of the accident was as follows:

"Well, sir, about five or ten minutes after five that afternoon there was an east Walnut street car going east and I blowed one whistle, that signified for traffic to go east and west. Mr. Melville was coming down in his automobile and this car was going east. The car had started to go up and Mr. Melville came down with his automobile and these young ladies there were standing on the south side of the car by the street car. (The Court):

South side or north side of the street car? (The Witness): On the north side. (A—continued): I hollered to him to stop; he never blowed his whistle or anything, his horn or anything, and I hollered for him to stop; just as he was about over here to that table from the women, he hollered 'look out;' as he hollered 'look out' he hit them and knocked all three of them down. (Q.) With reference to the speed of his automobile, how was he travelling? (A.) He was travelling, I judge it to be, ten or twelve miles an hour. (Q.) At that time, state, please, whether there were many or few people on that intersection? (A.) They were quite a few people in the intersection; yes, sir. (Q.) Up until the time he hollered 'look out' had you heard any horn or warning given by the defendant? (A.) None whatever. . . . . (Q.) What were these young ladies doing at that time, when he hollered 'look out'? (A.) They were waiting for this car to pass so they could cross the intersection."

John Walsburger, another police officer, was also near and witnessed the accident. His description of the occurrence was as follows:

"(Q.) Did you notice whether they were walking or standing still or what they were doing when the automobile approached them? (A.) They had to stand still; the car was going east. (Q.) The street car? (A.) Yes, sir. (Q.) Did you hear a horn or any warning given of the approach of this automobile? (A.) No, sir; I did not; only the hollering. (Q.) How far was the automobile away from these young ladies when he hollered? (A.) Well, about five foot. (Q.) Can you tell the jury about how fast the automobile was running at that time? (A.) It was going right between ten and twelve miles an hour."

The appellant's theory of the accident was that appellee and her companions stepped out from the crowd of persons who were crossing the street, in front of his automobile when it was only a few feet from them and too late for him to bring his car to a standstill and avoid the accident. He testified that he stopped his machine on the east side of Fourth street and did not again start it until the traffic officer gave the signal, following which he proceeded across Fourth street down to the point of the accident, at a slow rate of speed; that he sounded the horn of his machine upon starting it after the signal to move from the officer was given, but did not again

sound it after starting, although he saw, as he admits, as many as ten or twelve people on the crossing where appellee was injured, between the car track and pavement. In his opinion, as he stated, there was no necessity for sounding his horn, as he was on the track over which west-bound cars run and the congested condition of the crossing did not extend across the street car track. With reference to the speed of the automobile at the time of the accident, appellant testified that it was not more than three or four miles an hour, in which he was corroborated by R. O. Wellman, by whom he seems to have been arrested immediately after the accident. Wellman, on cross-examination, said he saw appellee and her companions standing in the street awaiting the moving of the street car from the crossing, but that they did not step out suddenly in front of the automobile, as testified by appellant. Henry W. Newman, Jr., another, witness for appellant, also expressed the opinion that at the time of the accident the speed of the automobile did not exceed three or four miles an hour.

Without further discussing the evidence in detail it is sufficient to say that it abundantly justified the submission of the case to the jury. That introduced for appellee, if believed by the jury, authorized the conclusion expressed by their verdict, viz.: That her injuries were caused by appellant's negligent operation of his automobile; and that she was not guilty of such contributory negligence as ought to have prevented the recovery by her of damages for the injuries sustained by reason of appellant's negligence. The signal of the traffic officer, by reason of which appellant claims to have moved his automobile westwardly across Fourth street from the point where he had momentarily stopped it east of that street, did not relieve him of the duty of sounding the horn of his machine, slowing its speed or otherwise exercising reasonable care for the safety of pedestrians on the opposite foot-crossing, and as much of the evidence conduced to prove he failed to observe these duties after seeing a large crowd of pedestrians on the intersection, and by reason thereof appellee was struck by the machine and injured, such failure constituted actionable negligence. If, as testified by appellee, she looked before stepping from the pavement to ascertain whether vehicles were approaching from the east side of Fourth street, from which appellant's automobile

came, and discovered none, she was not required thereafter to keep her eyes constantly turned in that direction, nor was it negligence or contributory negligence *per se* for her to stop in the street by the side of a standing street car to await its passage, in obedience to a signal from the traffic officer given immediately before or as she stopped. In any event, the question whether appellee was guilty of contributory negligence as well as that of appellant's negligence, should have been and was properly submitted to the decision of the jury by the trial court. Hence the peremptory instruction directing a verdict for appellant, asked by him at the conclusion of the evidence, was properly refused by the court.

In the very recent case of Weidner v. Otter, et al., 171 Ky. 167, the following general principles are emphasized as applicable to an action of the character here involved: (1) It is the duty of the operator of an automobile at street crossings as well as at other places used by pedestrains, to keep a lookout, to run his machine at a reasonable rate of speed, and to give warning of its approach; (2) It is the duty of a pedestrian in crossing a street used by automobiles and other vehicles to exercise such care as a person of ordinary prudence would exercise for his own safety in crossing a street at such a crossing, considering the amount and kind of vehicle traffic thereat. He is not obliged as a matter of law to look or listen for the approach of automobiles in order to keep out of their way, and whether he has exercised the proper degree of care is for a jury to say under all the facts and circumstances shown by the evidence in the case; (3) The pedestrian and the automobilist have equal rights in streets that are set apart for the use of vehicles as well as for the accommodation of pedestrians, and each has rights that the other is bound to respect.

It appears from the record that appellant was permitted to introduce and read in evidence on the trial the following sections of an ordinance of the city of Louisville:

"Section 55. Duties of Pedestrians. The roadbeds of highways and streets are primarily intended for vehicles, but pedestrians have the right to cross them in safety, and all drivers of vehicles shall exercise all proper care not to injure pedestrians, and pedestrians, before stepping from the sidewalk to the roadbed, should look to see what is approaching, and shall not needlessly,

interfere with the passage of vehicles. Pedestrians shall not cross diagonally the intersection of any highway, and in crossing shall be governed by directions of traffic officers."

"Section 59. Obedience to Traffic Officers, etc. Drivers must at all times comply with any direction given by voice, hand or whistle of any officer of the police force as to stopping, starting, approaching or departing from any place, and also as to the manner of taking up or letting off passengers and the loading and unloading of vehicles."

It is insisted for appellant that there was in the matter of receiving her injuries a violation by appellee of the provisions of one or both of the above sections, and that the trial court erred in refusing instructions Nos. 1, 2, 3 and 4 offered by appellant, by which the jury would have been advised of the effect to be given in this case to the alleged violation of the provisions of the traffic ordinance. This contention is unsound. As the sections of the ordinance, *supra,* are but declaratory of the common law, their provisions did not require of appellant or appellee any greater or different degree of care than that imposed by the law as uniformly applied by this court and clearly stated in the instructions that were given by the trial court; and although neither section is named in the instructions, the requirements of each are embraced therein. In other words, the law as expressed by the instructions is not in conflict with any provision of the ordinance and no provision of either section authorized the negligent operation of the automobile in the manner indulged in by appellant. For the foregoing reasons and because of the misleading effect they would probably have had upon the jury, the rejection by the court of the instructions offered by appellant on the subject of the ordinance was proper.

In contending that in starting his automobile from the east side of Fourth street as was done by him, appellant acted in obedience to a requirement of section 59 of the ordinance and a signal given by the traffic officer, his counsel ignore the negligence manifested by his subsequent conduct. He may have been authorized to move his automobile by a signal from the officer, but such signal did not require or authorize him to move it over the intervening street and the crossing being used by appellee without giving the necessary warning of its move-

ments, or at such speed as to make its collision with her unavoidable. The street car by which appellee's progress was obstructed was also put in motion by the same signal that caused appellant to start his automobile, and appellee upon stopping to await the passing of the car was rightfully in possession of the crossing and all the while in plain view of appellant as he approached in his automobile. Consequently, her presence there when struck by the automobile instead of constituting negligence *per se,* seems to have been imperatively necessary, because she could not have gone in front of the moving street car without endangering her life, nor would she have had time to return to the pavement from which she stepped upon the street, without coming into collision with appellant's automobile. In leaving the pavement and going upon the crossing she obeyed the requirements of section 55 of the ordinance, by looking to see what vehicles were approaching the crossing, at which time appellant's automobile was not in her view; and after going upon the street she could not have kept a constant lookout in either direction for the coming of vehicles, because she also had to look to where she walked after reaching the street, to avoid collision with other persons. It cannot, therefore, be said that her conduct in leaving the pavement and proceeding to the place of the accident as she did, under the circumstances, necessarily constituted negligence.

The only criticism of the instructions of the trial court found in the brief of the appellant's counsel is directed at the seventh and last one, which objections we will later consider. It is their contention, however, that none of the instructions should have been given, because, in their view of the case, there was such a showing of contributory negligence on the part of appellee as entitled appellant to a peremptory instruction directing a verdict for him. Our consideration of the instructions convinces us that they correctly gave for the guidance of the jury all the law applicable to the issues of fact in the case. In addition to defining ordinary care and the measure of damages in the event of a recovery by appellee, the instructions advised the jury as to the reciprocal rights and duties of the appellant and appellee in their use of the streets, the measure of care required of each, what acts or omissions on the part of appellant in operating his automobile would constitute actionable

negligence entitling appellee to damages for the injuries, if any, thereby caused her, and what acts or omissions upon her part would constitute negligence or contributory negligence that would defeat a recovery. Our conclusion as to the correctness and sufficiency of the instructions was reached by the application to the facts here presented of the tests furnished by the very latest decision of this court in the character of case here involved, viz.: Weidner v. Otter, *supra*. Indeed, the instructions so nearly conform to the statement of the law as in the opinion of that case expressed as would induce the belief that in writing them the trial judge had before him the opinion itself, but for the fact that the record shows that the instructions were written many months before the opinion.

Appellant's objection to instruction No. 7, which gives the measure of damages, is that it permitted, in the event of a verdict for appellee, a recovery of damages for permanent injury. One of the injuries sustained by appellee from her collision with the automobile was a fracture of one of her ribs, which was broken loose. She also received various cuts and bruises about her body and limbs. The evidence shows that she was confined to her bed for two weeks, was then up and about for nearly two weeks and again confined to her bed; that during the entire time she suffered much physical and mental pain. Upon being confined to her bed the second time it was discovered by the family physician, Dr. Sauter, who examined her, that she had a movable kidney. After an abortive attempt to hold the kidney in its proper position with adhesive straps, it was determined by the physician that an operation for the purpose of permanently securing the kidney in its proper position and relieving her sufferings was indispensably necessary. Thereupon a specialist, Dr. Schachner, was called in. According to his testimony he found appellee to be suffering a great deal of pain, to relieve which and prevent lockjaw an injection of anti-tetanic serum was necessary. The operation for securing the kidney was performed by Dr. Schachner. It further appears from the testimony of both Dr. Sauter and Dr. Schachner that the movable kidney resulted from her collision with appellant's automobile. The physicians expressed the opinion that her injuries were permanent. In view of the evidence we are of opinion that appellee was entitled

to recover upon the ground that the injuries sustained by her were of a permanent nature, that is, such as will probably injuriously affect her health in the future. It was not, therefore, error for the court to embrace in instruction No. 7 the recovery of damages for permanent injury.

We are unable to sustain appellant's final contention, that the amount of damages awarded appellee by the verdict was excessive. It appears that it will take $75.00 of the amount recovered to pay the bill incurred by her while in the hospital and that her doctors' bills amounted to about $300.00. There would, therefore, be left a little less than $900.00 to compensate her for the injuries sustained. We are unwilling to declare this amount unreasonable.

Judgment affirmed.