DEWEY BARRETT, APPELLANT, v. ALAMITO DAIRY COMPANY, APPELLEE.

FILED FEBRUARY 10, 1921. NO. 21043.

1. Municipal Corporations: STREET INTERSECTIONS: LAW OF THE ROAD. In the absence of some regulation to the contrary, the rule of the road with respect to vehicles approaching a street crossing at intersecting points is that the first to enter upon the crossing has the right of way.

2. ———: ———: ———. In such case, the law of the road does not require that a wagon should stop and allow an automobile to pass in front simply because it is a faster-moving vehicle.

3. ———: ———: ———. In such case, the law requires of both users of the street intersection the exercise of reasonable and ordinary care.

4. ———: ———: ———. Where a wagon-driver, having the right of way, has entered upon a crossing at a street intersection, he may assume that the driver of an automobile approaching the crossing at right angles will not negligently operate the car so as to place the occupants in danger of a collision; and he may

safely act upon this assumption until a situation is presented which, to the mind of a reasonable person, places the occupants of the car in a position of peril. It then becomes the duty of the wagon-driver to exercise every reasonable precaution to avoid injury.

5. ――――: COLLISION: LAST CLEAR CHANCE. Evidence examined, and *held* not to present a case for the application of the "last clear chance" doctrine.

APPEAL from the district court for Douglas county: CHARLES LESLIE, JUDGE. *Affirmed.*

*Anson H. Bigelow,* for appellant.

*Raymond T. Coffey, contra.*

DAY, J.

Dewey Barrett, a minor, by his next friend, brought this action against the defendant to recover damages for personal injuries received by him in a collision between an automobile in which he was riding and a milk wagon driven by an employee of the defendant. His cause of action is based upon the alleged negligence of the defendant. At the close of the plaintiff's testimony the trial court, on motion of the defendant, directed a verdict in its favor, and dismissed the plaintiff's action. The plaintiff has appealed.

Counsel for plaintiff correctly, we think, states that the main question to be determined is whether the facts present a case to be submitted to the jury under the doctrine of the last clear chance. This involves an examination of the evidence.

The record shows that Twenty-fourth street in the city of Omaha extends north and south, and is intersected at right angles by K street. Both streets are paved. From curb to curb, Twenty-fourth street is 60 feet wide and K street 44 feet wide. Between the curbs and the lot line of the respective streets is a sidewalk space of 18 feet and 6 inches. On July 23, 1916, at about 2 a. m., an employee of the defendant, driving a team of horses attached to one of defendant's milk wagons, was proceeding eastward

upon K street, driving slowly upon the right-hand side of the street. The team was walking slowly, and did not accelerate or slacken its speed in attempting to cross the intersection. On the morning in question the plaintiff, a boy of about 18 years of age, in company with one Sidney Miller, about one year older, were riding in a Moline-Knight touring car. These young men had been out riding, the plaintiff paying in part at least for the gasoline. The car was being driven by Miller. The plaintiff was sitting on Miller's right on the the front seat, resting his right arm on the top edge of the front door. As the car approached K street, proceeding south on the right-hand side of the street, a man was seen by the driver of the car crossing Twenty-fourth street from the west side, some 15 feet north of the usual crossing place. To avoid injury to the pedestrian, the driver of the car swung it to the right over near the west curb of Twenty-fourth street. At this juncture the driver of the car gave a hasty glance back to see whether he had cleared the man. The car was then running at about 20 miles an hour. While the driver was in the position of glancing back, the plaintiff gave an exclamation, "Look out," and at the same time grabbed the wheel and gave the car a turn to the left. The driver of the car looked up, and, for the first time, saw the team about 45 feet away just entering K street. In describing what then occurred the driver of the car says: "I gave the wheel an additional turn to the left; * * * I speeded up to get across before the wagon would be out far enough to reach me." He says he did not have time to stop; that the car was running 20 miles an hour. The plaintiff's estimate of the speed of the car was about 18 miles an hour. In attempting to swing around in front of the wagon, and just as the car was passing in front of the horses' heads, the wagon driver suddenly reined them in, causing the wagon tongue to be elevated in such a manner that it escaped the front end of the car, but caught plaintiff's right arm, injuring it so badly that amputation was necessary. The point of collision, as fixed by the witnesses, was on the

south side of the intersection, and about 17 feet east of the west curb line of Twenty-fourth street. The driver of the wagon saw the lights of the car as his team was crossing the gutter line about along the west curb line of Twenty-fourth street.

Do the facts, as above outlined, present a case for the application of the "last clear chance" doctrine? We are of the opinion that they do not. That rule of law is based upon the idea that, where a person is placed in a position of danger, whether negligently or not, and where such peril is known to another, or where the situation and surroundings are such that he ought to have known of the danger, it then becomes the duty of the latter person to exercise every reasonable precaution to avoid injury to the party so in peril, and the failure to do so is actionable negligence. *Johnston v. Delano,* 100 Neb. 192.

Under the rule of the road, the defendant's driver having first entered upon the intersection of the two streets, in the absence of some regulation to the contrary, had the right of way. In the use of the street he was of course bound to exercise ordinary care, but he was not obliged to stop or slacken his speed simply because an automobile was approaching at right angles at a rapid rate of speed. He was not bound to anticipate that the driver of the car would do some negligent act and thus expose the occupants of the car to danger. Under the circumstances then present, he had the right to presume that the driver of the car would stop, or turn to the left into K street, or if he attempted to pass in front that he would swing out far enough to the left to clear the wagon, especially in view of the fact that there was a clear space in front of approximately 43 feet between the point of collision and the east curb line of Twenty-fourth street. The wagon-driver had the right to act on this assumption until a situation was presented which would suggest to a reasonable person that the occupants of the car were being placed in a position of danger. It then became the

duty of the wagon-driver to exercise all reasonable precaution to avoid a collision.

For cases sustaining the propositions discussed, see: *Rupp v. Keebler*, 175 Ill. App. 619; *Elgin Dairy Co. v. Shepherd*, 183 Ind. 466; *Jahn & Co. v. Paynter*, 99 Wash. 614; *Brown v. Chambers*, 65 Pa. Super. Ct. 373; *Knox v. North Jersey Street R. Co.*, 70 N. J. Law, 347; *Lawrence v. Goodwill*, 186 Pac. (Cal. App.) 781.

As we view the testimony, the period of time elapsing between the time the occupants of the car were placed in a position of danger and the instant of the collision was so brief as to be scarcely appreciable. The driver of the car estimated his speed at 20 miles an hour, which would be approximately 29⅓ feet a second. The plaintiff's estimate of the speed was 18 miles an hour, or approximately 26 feet a second. There is no testimony as to the speed of the milk wagon except that the horses were walking slowly. We can, however, take judicial notice that under the facts shown the wagon was not proceeding in excess of 5 miles an hour, in all probability less. It seems entirely safe to say that the car was moving four times as fast as the team. This relative speed would indicate that, when the driver of the car saw the team 45 feet away, the team was well into the street and approximately 7 feet from the point of collision. The car would cover this distance in about 1½ seconds. At this distance there was nothing in the situation to suggest that the occupants of the car were being placed in a position of peril. Not until the driver of the car drove directly in front of the team, or was so close that it was apparent that he intended to do so, were the occupants of the car in a position of peril.

Under all of the circumstances it is quite apparent to us that the danger did not arise until almost the instant of the collision. It was so small a fraction of time that there was no reasonable opportunity of avoiding the collision after the occupants of the car were in a place of danger. In view of all of the circumstances we are convinced that reasonable minds could not say that the wagon-driver

was negligent in not sooner anticipating the danger of a collision.

We find no error in the ruling of the trial court, and the judgment is

AFFIRMED.