## Keys et al. v. Nash's Adm'x.

(Decided May 19, 1936.)

WILSON & HARBISON and LEER BUCKLEY for appellant Hughes & Co.

W. E. DARRAGH for appellant Howard Keys.

JOHN Y. BROWN and JOSEPH J. BRADLEY for appellee.

OPINION OF THE COURT BY JUDGE REES—Affirming.

Alice Nash was struck and killed by an automobile owned by Hughes & Co. and driven by Howard Keys. The accident occurred at the intersection of Euclid avenue and South Ashland avenue in Lexington about 6 p. m. February 28, 1932. The administratrix of her estate brought this action against Keys and Hughes & Co. to recover damages for her death, which allegedly resulted from the negligent operation of the automobile by Keys. The defendants denied negligence, and pleaded contributory negligence on the part of the decedent. Hughes & Co. also denied that Keys, at the time of the accident, was acting as its agent, servant, or employee. The jury returned a verdict against both of the defendants for $1,000, and they have appealed.

Appellants insist that the judgment should be reversed because (1) the decedent was guilty of contributory negligence as a matter of law, and the trial court therefore should have sustained their motion

for a directed verdict in their favor; (2) the evidence failed to show that Keys was negligent; and (3) there was no proof of any damage to the decedent's estate. In addition to these grounds, Hughes & Co. argues that the evidence fails to show that Keys was acting as its agent when the accident occurred.

The decedent, Alice Nash, lived on South Ashland avenue, south of Euclid avenue, with her niece, Mrs. Fannie Johnson Gasser. She walked to the home of Mrs. Gasser's father on Maxwell street during the afternoon of February 28, and started home shortly after dark. She walked south on South Ashland avenue until she reached Euclid avenue, where she stopped until two automobiles passed which were proceeding west on that avenue. She then started to cross Euclid avenue at the point where pedestrians usually crossed, and had reached a point about 10 feet from the south curb of the avenue when she was struck by the automobile driven by Howard Keys, who was traveling east on Euclid avenue. She was hurled from the west side of South Ashland avenue to the east side of that avenue, a distance of about 25 feet.

Appellants rest their contention that the decedent was guilty of contributory negligence as a matter of law on the testimony of Clyde Clark, who was walking south on the west side of South Ashland avenue, a short distance behind Miss Nash, and who testified that she was looking to her left when she started across Euclid avenue. He saw her turn her head to the left, and she seemed to be looking at a car approaching from the east. He did not state that she continued to look to the left until she had walked more than half the width of Euclid avenue and was struck. There was evidence that Keys was driving his automobile at a speed of from 25 to 35 miles an hour, and the fact that the decedent was hurled a distance of 25 feet was, of itself, evidence that he was traveling at a rapid rate of speed. There is no evidence that decedent, after she entered Euclid avenue, failed to exercise ordinary care for her own safety. She was only required to exercise the care that an ordinarily prudent person usually exercises under like or similar circumstances. She was at a place where she had a right to be, and she was entitled to rely on the drivers of motor vehicles performing their duties, which were to keep a

lookout, drive at a reasonable rate of speed, and have their cars under reasonable control. It is the duty of a driver of an automobile to have his car under such control that he will, when approaching a street intersection, be able to avoid endangering the safety of pedestrians whose presence may reasonably be expected. The rights of a pedestrian and an automobile driver at a street intersection are reciprocal, and each must use the degree of care that the circumstances demand. Trainor's Adm'r v. Keller, 257 Ky. 840, 79 S. W. (2d) 232; Louisville R. Co. v. Breeden, 257 Ky. 95, 77 S. W. (2d) 368; Melville v. Rollwage, 171 Ky. 607, 188 S. W. 638, L. R. A. 1917B, 133; Weidner v. Otter, 171 Ky. 167, 188 S. W. 335. The only automobile near the intersection of the two avenues at the time of the accident, other than the one driven by Keys, was one driven by Professor Alfred Brower, which was approaching the intersection from the east on Euclid avenue. Mrs. Henry Foushee was driving an automobile east along Euclid avenue behind the Keys car. There was nothing to obstruct Keys' view of the crossing, and it is a reasonable presumption that, if he had been keeping a lookout, and had been traveling at a reasonable rate of speed, the accident would have been avoided. There was some evidence authorizing an inference that Keys was negligent in the operation of the automobile, and it was a question for the jury to determine whether he exercised due care and whether the decedent was guilty of contributory negligence.

The decedent was 73 years of age, and it is argued that there is no evidence that she had any earning power, and therefore her estate was not damaged by reason of her death. The proof showed that she was in good health and active in view of her age, and was able to and did perform the ordinary and usual work about the house. It has been held in numerous cases that the failure to introduce evidence of earning capacity is not fatal to a recovery. Heil v. Seidel, 249 Ky. 314, 60 S. W. (2d) 626; Fry & Kain v. Keen, 248 Ky. 548, 59 S. W. (2d) 3; Chesapeake & O. Ry. Co. v. Bland, 171 Ky. 430, 188 S. W. 498; Chesapeake & O. Ry. Co. v. Bank's Adm'r, 153 Ky. 629, 156 S. W. 109. In the last-cited case it was said:

"The decedent was 82 years of age at the time of his death, and it is urged that, as there was no

evidence of earning capacity upon his part, the verdict for $1,300 is excessive, and should not be upheld; that, as there was no evidence of earning capacity, the jury had no basis upon which to fix the amount of recovery, the instruction authorizing a recovery only for the destruction of his power to earn money. In other words, the contention, when analyzed, is that there can be no recovery for the negligent killing of a person so old. * * * Even though deceased was old, feeble, and infirm, the jury had a right to infer he had some earning capacity.''

It is the contention of the appellant Hughes & Co. that the proof fails to show that Keys was acting as its agent, and that as to it a peremptory instruction should have been given. The proof shows that Howard Keys was an employee of Hughes & Co., but the driving of the company's automobiles was not a part of his duties. The accident occurred on Sunday, and he was not working on that day. His father, W. W. Keys, was sales manager of Hughes & Co., and was in charge of its automobiles. Shortly before the accident, W. W. Keys directed his son to take the Hughes & Co. automobile to the Keys home where it was usually kept at night. It was while Howard Keys was performing this mission that the accident occurred. He was driving the automobile at the direction of appellant's sales manager, who had the authority to direct its use in the company's business. Howard Keys had authority to use the car, and, under the facts, it was for the jury to say whether or not he was acting as the agent or employee of Hughes & Co. Howard Keys was not upon a mission of his own, but was driving the automobile at the direction of an employee who had charge and supervision of the automobiles of the company. The evidence was amply sufficient to take the case to the jury on the question of agency. Ashland Coca Cola Bottling Co. v. Ellison, 252 Ky. 172, 66 S. W. (2d) 52; Wood v. Indianapolis Abbatoir Co. of Ky., 178 Ky. 188, 198 S. W. 732.

The judgment is affirmed.