# Pryor's Administrator v. Otter.

(Decided May 4, 1937.)

DAVID R. CASTLEMAN and DAVID R. CASTLEMAN, JR., for appellant.

HUFFAKER, HOGAN & BERRY for appellee.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—Reversing.

The appeal is from a judgment for the defendant, John D. Otter, in an action for damages for the death of Miss Barbara Pryor, caused by being struck by an automobile driven by him.

The accident occurred between 7 and 8 o'clock in the evening of December 11, 1935, at the intersection of Brook and Breckinridge streets in Louisville. The decedent was walking south on the east side of Brook street, and the defendant was driving east on the south side of Breckinridge. The weather was cold and Miss Pryor, dressed in dark clothing was holding her large coat collar turned up. A motorist traveling west slowed down for her to pass. Others in a car traveling north on Brook street, who had stopped for the boulevard traffic, observed her crossing the street. But the defendant testified he did not see her. There was a street light on the northwest corner and the lights of the automobile of the defendant and the car coming from the east were burning. The decedent had crossed well beyond the center of Breckinridge street when she was struck by the right fender of the defendant's automobile. He was traveling at 15 or 20 miles an hour and on the right side of the street, being 6 or 8 feet from the right-hand curb. The street is 36 feet wide. It was estimated that Miss Pryor was walking at a normal speed of three miles an hour and had gone 27 feet on the crossing when she was struck. So the motorist, at the lesser speed of 15 miles, had traveled at least 135 feet after the pedestrian had started to cross. There were two or three cars proceeding in front of him, the closest being about 25 feet ahead. The defendant testified that the first knowledge of Miss Pryor's presence was when he felt the impact. His car stopped within its length.

An ordinance had designated Breckinridge street as a boulevard. There seems to be three different classes of street crossings for pedestrians. One where traffic is controlled by automatic lights or police officers. Another where lines have been painted on the street paving to form a lane connecting or projecting the side-

walks on either side, designated as "cross-walks." Other crossings are without specific designation or control. The intersection where the accident occurred was of the second class where there were crosswalks. The decedent was proceeding in such a lane or passageway.

If there be no statute or ordinance changing the rule, pedestrians and automobile drivers have equal rights in the use of streets and highways. In exercising or claiming those respective rights there are reciprocal duties. Each party must recognize the rights of the other and exercise reasonable care to avoid injuring the other and of being injured himself. But owing to inequality of their situations and the disparity in their respective capacities to inflict injury, the requirements of ordinary care are different—the term being a relative one, dependent in its application upon the conditions and the degree of circumspection and action demanded by those circumstances. So the elements constituting ordinary care or reasonable precaution on the part of a motorist are materially different from those of the pedestrian. Berry on Automobiles, secs. 2.319, 3.139; Weidner v. Otter, 171 Ky. 167, 188 S. W. 335; Melville v. Rollwage, 171 Ky. 607, 188 S. W. 638, L. R. A. 1917B, 133; Bruce's Adm'x v. Callahan, 185 Ky. 1, 213 S. W. 557; Trout's Adm'r v. Ohio Valley Electric Railway Company, 241 Ky. 144, 43 S. W. (2d) 507; Trainor's Adm'r v. Keller, 257 Ky. 840, 79 S. W. (2d) 232; Jackson's Adm'r v. Rose, 239 Ky. 754, 40 S. W. (2d) 343.

These general common-law duties require, upon the one hand, that a motorist exercise reasonable care in anticipating the presence of pedestrians at street crossings; that, specifically, he keep a lookout and give reasonable and timely warning of his approach by the usual and customary signals. And, as well, he must use the same care not to injure pedestrians if he is aware of their presence, although he may assume they will themselves act with reasonable prudence and not unexpectedly or suddenly place themselves in his path. On the other hand, the pedestrian must exercise ordinary care for his own safety, which unquestionably includes the duty to observe the traffic conditions and take proper precautions to avoid placing himself in such a position that a motorist who is himself exercising due care may be unable to avoid injuring him. What that degree of care requires that he should do before attempting to

cross the street is a matter to be determined by the jury without being pointed out in the instructions. The pedestrian too has the right to proceed upon the assumption that a motorist will act with reasonable care in relation to his position. But, if he sees he is not doing so, the pedestrian cannot rest upon assumption and must take such reasonable measures as he can in the circumstances to prevent his own injury. Berry on Automobiles, secs 2.319, 3.140; Weidner v. Otter, supra; Carr v. Warford, 198 Ky. 690, 249 S. W. 1024; American Dye Works v. Baker, 210 Ky. 508, 276 S. W. 133; Metts' Adm'r v. Louisville Gas & Oil Company, 222 Ky. 551, 1 S. W. (2d) 985; Wilder v. Cadle, 227 Ky. 486, 13 S. W. (2d) 497; Deshazer v. Cheatham, 233 Ky. 59, 24 S. W. (2d) 936; Jackson's Adm.r v. Rose, supra; Roederer's Adm'x v. Gray, 253 Ky. 669, 69 S. W. (2d) 998; Trainor's Adm'r v. Keller, supra.

Statutes and ordinances defining duties and regulating traffic are regarded as declaratory of the common law and supplementary thereto. Compliance with their terms does not absolve a motorist from a charge of negligence if he has failed to exercise ordinary care. Berry on Automobiles, sec. 2.316; Moore v. Hart, 171 Ky. 725, 188 S. W. 861; Jackson's Adm'r v. Rose, supra. A violation of the terms of a statute or ordinance is in this jurisdiction held to be negligence per se. But, of course, that negligence must have been the proximate cause of the injury in order to authorize recovery of compensation. National Casket Company v. Powar, 137 Ky. 156, 125 S. W. 279; Cumberland Tel. & Tel. Co. v. Yeiser, 141 Ky. 15, 131 S. W. 1049, 31 L. R. A. (N. S.) 1137; Collett's Guardian v. Standard Oil Company, 186 Ky. 142, 216 S. W. 356; Hart v. Roth, 186 Ky. 535, 217 S. W. 893; Hardware Mutual Casualty Company v. Union Transfer & Storage Company, 205 Ky. 651, 266 S. W. 362.

In the case at bar the respective duties of the parties were established by the common law, by the statutes, and by an ordinance. Among the duties prescribed by the statute are that a driver shall operate his automobile in a careful manner, with due regard for the safety and convenience of pedestrians (section 2739g-35, Statutes), and shall sound a horn or other device whenever necessary as a warning of its approach to pedestrians. Section 2739g-28. Instructions only as to

these two statutory duties were applicable to the facts of this case, for the evidence was undisputed that the defendant was driving at a reasonable rate of speed according to the statutes, and otherwise conforming with their terms. While the defendant testified he did not see Miss Pryor until he struck her, yet the circumstances were such that he could have done so. Whether he should have seen her in the exercise of ordinary care and have given a warning was for the jury. The duty of sounding a horn was not obviated by the fact he did not see her. Nunnelley's Adm'r v. Muth, 195 Ky. 352, 242, S. W. 622, 27 A. L. R. 910.

The traffic code of the city of Louisville, based on the Model Traffic Ordinance prepared by the National Conference on Street and Highway Safety, deals comprehensively with the complex problem. Ordinance No. 94, Series of 1933. We shall confine our consideration to those portions of the ordinance which seem to have a particular application to the facts in hand.

Article IV pertains to "Pedestrians, Rights and Duties." Section A provides that the director of works shall establish and maintain crosswalks (as we have described them) in what is termed the Central Traffic District, and in addition may do so "where in his opinion there is particular danger to pedestrians crossing the roadway." Where so established, pedestrians shall use such crosswalks, but "when crossing at any place other than a cross-walk (they) shall yield the right-of-way to all vehicles upon the roadway." Section C is in part as follows:

"(Right-of-way of pedestrians at intersections). It shall be unlawful for the operator of any vehicle to drive into a crosswalk, whether marked or unmarked, while there is in such cross-walk in the path of such vehicle any pedestrian engaged in crossing the roadway, until such pedestrian shall have passed beyond the path of said vehicle."

Article V pertains to the "Operation of Vehicles." Section G of that article, deals with the matter of right-of-way vehicles. Its subsection 1 provides that authorized emergency vehicles and those carrying United States mail and funeral processions shall have the right of way on any street "over all other vehicles and pedestrians." Section G-3 provides that "Vehicles oper-

ated along a boulevard * * * shall have the right-of-way at intersection of such boulevard * * * excepting intersections where traffic is controlled by a police officer or a 'Stop' and 'Go' signal, or where the right-of-way or vehicles is otherwise regulated by official signs or markings.'' Section G-5 provides that "the operator of any vehicle at any intersection not so controlled (by police officers or traffic signals) shall grant the right-of-way to a pedestrian lawfully crossing within a cross-walk.'' Section H, dealing with boulevards, provides that the operator of any vehicle intersecting a boulevard shall bring the same to a complete stop and shall make no attempt to drive it into or across such streets un-less it can be done without danger of collision with ve-hicles thereon, except when a stop is not required by a police officer or a ''Stop'' and ''Go'' signal. There is no reference whatever to pedestrians in this regulation of boulevard traffic.

All these regulations of Article V deal exclusively with vehicles and provide that, excepting emergency au-tomobiles, mail, and funeral cars, automobiles must yield to the right of way of a pedestrian at crosswalks, as is provided by Article IV, to which we have referred. The two articles are cognate and work together without con-flict. The ordinance defines ''right-of-way'' as being ''the privilege of the immediate and preferential use of the street.''

It is clear these provisions of the ordinance mean that, where the municipal authorities have laid down crosswalks, even over a boulevard, pedestrians have the right ''of the immediate and preferential use of the street'' over ordinary motorcars in such established way. The terms are clearly affirmative and permissive as to pedestrians, negative and inhibitory as to motor-ists.

A municipality, as a valid exercise of its police pow-er, may regulate the use of its streets by motorists and may designate places where pedestrians may cross them and control their movements. Berry, sec. 2.118; Snyder v. Campbell, 145 Miss. 287, 110 So. 678, 49 A. L. R. 1402. There is no conflict in the provisions of the ordinance under consideration with any prevailing statute. The ordinance determines the precedence and must be given force and effect.

The conditions described in Section C, of Article IV, of the ordinance quoted, existed here where there were marked crosswalks. Under similar statutory provisions it has been held that one given the right of way has an absolute right, but the weight of authority seems to regard it as only relative. The definition of "right-of-way" given in the ordinance—"immediate and preferential"—coupled with our own pronouncements in analogous cases (involving only vehicles, under section 2739g-37, Statutes) requires it to be said that this right of precedence given the pedestrian is relative and not absolute or inflexible. It only has the effect of turning the scales where the rights of the parties are balanced. It has no special application except where the parties approach the "path of the vehicle" so nearly at the same time and at such rates of speed, respectively, that if both proceed each without regard to the other collision or interference between them is reasonably to be apprehended. In such condition, the pedestrian has the first use of the crossing, and it is made the duty of the motorist to yield the right of way to the pedestrian by diverting his course, slowing down or stopping in order to give a reasonable opportunity to pass in safety. 2 Blashfield's Cyc. of Automobile Law (Permanent Ed.), sec. 1272; Berry, secs. 3.13, 3.191; Annotation, 21 A. L. R. 974; 5 Am. Jur. 664; Bradley v. Schmidt, 223 Ky. 784, 4 S. W. (2d) 703, 57 A. L. R. 1100; Bora v. Yellow Cab Company, 103 N. J. Law, 377, 135 A. 889; Olsen v. Peerless Laundry, 111 Wash. 660, 191 P. 756; Lucas v. Craft, 161 Va. 228, 170 S. E. 836; Heikkinnen v. Cashen, 183 Minn. 146, 235 N. W. 879; Horwitz v. Eurove, 129 Ohio St. 8, 193 N. E. 644, 96 A. L. R. 782.

Under such circumstances, the pedestrian is not obligated to stop or slacken his pace. But because he has the right of way he may not proceed serenely oblivious of surrounding circumstances. He is of course bound to exercise ordinary care for his own safety. Weidner v. Otter, supra; Wilder v. Cadle, 227 Ky. 486, 13 S. W. (2d) 497; Melville v. Rollwage, supra; Bruce's Adm'x v. Callahan, supra; Peak v. Arnett, 233 Ky. 756, 26 S. W. (2d) 1035; Lieberman v. McLaughlin, 233 Ky. 763, 26 S. W. (2d) 753; Barrett v. Alamito Dairy Company, 105 Neb. 658, 181 N. W. 550, 21 A. L. R. 966; Sawyer v. Blankenship, 160 Va. 651, 169 S. E. 551. If the machine is so near him that a collision would naturally

be expected to follow, continuing on his way across could hardly be regarded as reasonable or prudent. Rupp v. Keebler, 175 Ill. App. 619; Minnis v. Lemp Brewing Company (Mo. App.) 226 S. W. 999; Brown v. Chambers, 65 Pa. Super. 373; Thrapp v. Meyers, 114 Neb. 689, 209 N. W. 238, 47 A. L. R. 585.

It cannot be said as a matter of law that the decedent was guilty of contributory negligence, as the appellee contends. There is no evidence of negligence on her part except that she undertook to cross the street and pass in front of the approaching automobile. Though a circumstance to be considered by the jury, it does not necessarily follow that because she had her collar turned up over her face she could not and did not see directly ahead or laterally toward the automobile traffic. On the other hand, it is a strong circumstance, to be considered by the jury in her favor, that she left the sidewalk when defendant's car was from 135 to 180 feet away and therefore most probably she had the right of way. Horwitz v. Eurove, 129 Ohio St. 8, 193 N. E. 644, 96 A. L. R. 782; McDonald v. Wickstrand, 206 Wis. 58, 238 N. W. 820; Elmberg v. Pielow, 113 Wash. 589, 194 P. 549.

In Jensen v. Culbert, 134 Wash. 599, 236 P. 101, involving a similar ordinance, where a pedestrian stepped into the street when the defendant's automobile must have been more than 100 feet away, there being nothing to show the contrary, the court stated it must be assumed that the pedestrian not only saw but believed she was safe in undertaking to cross the street, hence, that it could not be held that she was guilty of contributory negligence as a matter of law.

In McQuigg v. Childs, 213 Cal. 661, 3 P. (2d) 309, 310, a pedestrian was injured by being struck while crossing Hollywood boulevard in Los Angeles, where the sidewalks had been projected in the same manner as in the instant case, and there was an ordinance in practically the same language as Section C, Article IV, of the Louisville ordinance quoted above. The pedestrian was within the zone thus marked, going to board a streetcar. Notwithstanding an unobstructed view for a distance of 75 feet or more, the driver of the truck, running at 25 miles an hour, did not see her until he was practically upon her. He sounded no horn and gave no other alarm. Before attempting to cross the street, the

plaintiff had seen the truck about 125 feet away and calculated that she could cross to the streetcar in safety. The negligence of the driver was not disputed, reliance for relief from a verdict for the plaintiff being had upon her contributory negligence. That was held to be a question for the jury. Said the court:

> "We think she had a right to assume that an observance of laws and a reasonable regard for the safety of others on the part of the driver of the truck would not require that she should keep a constant eye upon him under the circumstances of the case. He could have seen her hurrying for the car, as did others, and it was his primary duty to have done so."

Under conditions quite similar to the case at bar, except there was no question of a superior right of way on the part of the pedestrian, we held the question of negligence of both parties was for the jury, in Keys v. Nash's Adm'x, 264 Ky. 398, 94 S. W. (2d) 1006, 1007. See, also, Fenton Dry Cleaning & Dying Company v. Hamilton, 226 Ky. 580, 11 S. W. (2d) 409. Cf. Foreman v. Western Union Telegraph Company, 228 Ky. 300, 14 S. W. (2d) 1079.

The instructions given advised the jury that the defendant had the right of way. Not only in that respect, but otherwise, the instructions seem to be erroneous. There being no issue formed by the evidence of any statutory negligence other than in the particulars stated, instructions in the following form may be given upon another trial if the evidence and requests for instructions are substantially the same:

No. 1. It was the duty of the defendant, Otter, in the operation of his automobile: (a) To exercise ordinary care for the safety of persons using the street, including the plaintiff's intestate, Barbara Pryor; (b) to keep a lookout for pedestrians at the street intersection and exercise ordinary care to avoid injuring them; (c) to sound his horn or other device if it was necessary to warn the decedent of the approach of his automobile; and (d) if the decedent had entered upon the crossing and was walking toward the path of defendant's automobile at such rate of speed that the defendant could not reasonably and prudently proceed without colliding with her or exposing her to danger, then it was the duty

of the defendant to yield the right of way by altering his course, reducing his speed, or stopping his car to permit her to pass ahead of him in safety. If you shall believe from the evidence that the defendant failed to observe any one or more of those duties and by reason thereof the decedent, Barbara Pryor, was struck and sustained injuries from which she died, you will find for the plaintiff. Unless you so believe, or, if you shall believe as in Instruction No. 2, you will find for the defendant.

No. 2. Although the jury may believe from the evidence that the defendant, Otter, failed to discharge one or more of the duties outlined and thereby caused Miss Pryor's death, as in Instruction No. 1; yet, if you shall further believe from the evidence that the decedent herself failed to exercise ordinary care for her own safety and by reason of such failure she helped to cause or to bring about her injuries, and but for her said failure, if any, she would not have been injured, then you should find for the defendant.

No. 3. "Ordinary care," as used in these instructions, in its application to the defendant means that degree of care which a person of ordinary, average prudence and skill, engaged in driving an automobile, usually exercises under circumstances like or similar to those proven in this case. "Ordinary care," as used in these instructions, in its application to the plaintiff's decedent, means that degree of care usually exercised by ordinarily prudent persons for his or her own safety under circumstances and conditions in the case.

Of course, proper instructions on measure of damages and as to the number of jurors required to make a verdict should be given.

The judgment is reversed.

Stites, J., not sitting.