# Hardware Mutual Casualty Company, et al. v. Union Transfer & Storage Company.

(Decided November 21, 1924.)

## Appeal from Franklin Circuit Court.

1. Damages—Absence of Evidence as to Value of Automobile Before and After Collision Not Ground for Directed Verdict.—In action for damages to automobile in which there was evidence as to the amount expended for repairs, direction of verdict for defendant on ground that plaintiff failed to show value of car just before and value just after collision held error, in view of plaintiff's right to nominal damages.

2. Highways—Truck Parked on Highway for Unloading Held in "Operation" Within Statute Requiring Lights.—Trucks parked on highway for purpose of unloading furniture held in "operation" within section 2739g-24, Ky. Stats., requiring lights on trucks when in "operation" in view of subsection 3.

3. Highways—Violation of Ordinance Requiring Lights on Motor Vehicles Held Negligence.—Violation of section 2739g-24, Ky. Stats., requiring lights on motor vehicles when in operation by leaving trucks parked without lights held negligence.

4. Negligence—"Proximate Cause" Defined.—"Proximate cause" is that cause which naturally leads to, and which might have been expected to produce, the result.

5. Negligence—Proximate Cause Question for Jury.—The proximate cause of an injury is ordinarily question for the jury, and court cannot take question from jury unless facts are such that fair-minded men ought not to differ about them.

6. Highways—Whether Parking of Trucks Without Lights was Proximate Cause of Collision with Automobile Held for Jury.— Where plaintiff automobile driver turned to left of highway to avoid collision with defendant's truck, parked on highway without lights, and collided with furniture in defendant's other unlighted truck in returning to right side of road, question of whether violation of section 2739g-24, Ky. Stats., requiring lights, was proximate cause of accident, held for jury.

7. Highways—Contributory Negligence of Driver of Automobile which Collided with Truck Parked Without Lights Held for Jury. —In action for damages to automobile caused by collision with furniture in unlighted truck parked on highway in nighttime, question of contributory negligence of automobile driver held for jury.

8. Negligence—Negligence Question for Jury.—Whenever there is any doubt as to the facts or whenever there may reasonably be difference of opinion as to the inferences and conclusions from the facts, the question of negligence is for the jury.

9.  Negligence—Failure to Adopt Safest Course in Emergency will Not Preclude Recovery.—When a person has been placed in a position of peril by the negligence of another and must act in an emergency, the fact that he does not adopt course best for his safety will not preclude a recovery, provided he acts with such care and judgment as may be reasonably expected of a person of ordinary prudence under like circumstances.

HOBSON & HOBSON for appellant.

H. L. MEANS, J. WOODFORD HOWARD, and O'REAR, FOWLER & WALLACE for appellee.

OPINION OF THE COURT BY DRURY, COMMISSIONER— Reversing.

The appellant here was the plaintiff below, and at the conclusion of its evidence, the court peremptorily instructed the jury to return a verdict for the appellee. This litigation grew out of a collision which took place on the night of June 19, 1923, on the Versailles pike, just outside the city limits of Frankfort in Franklin county, Kentucky.

The appellee, Union Storage and Transfer Company, was delivering goods of some character to one Lonnie Gardner, whose property is situated immediately upon the north side of the Versailles pike. One of appellee's trucks was backed up to the front porch of Gardner, and two other trucks were parked on the roadside. All of these were motor trucks. This is another case where the witnesses in giving their testimony constantly refer to a plat drawn on the court room floor, which perhaps was of great assistance to the jury, but as it was not copied into the record, it has proved very confusing to this court. As best we can gather from the record, the truck referred to as No. 1, was the one that was backed up to Gardner's premises, and from which the goods were being unloaded. It was crosswise of the road.

The truck referred to as No. 2 was east of truck No. 1, or in the direction of Versailles from truck No. 1, and appears also to have been crosswise of the road, or nearly so, but instead of the front of this truck protruding into the road, the rear of it was out in the road, and the front was over on the north side of the highway. Truck No. 3 was still farther to the east than truck No. 2, and was parked on the north side of the road and was parallel

with the road. There were no lights burning on these trucks.

This Gardner property is situated in a valley or depression and these trucks, standing in this valley or depression, were concealed from the view of one approaching from the direction of Versailles, by a hilltop.

John R. Sower was using this Versailles pike, returning from Lexington between twelve and one o'clock at night, in a Cadillac sedan. As he came over this hilltop, he saw immediately in front of him truck No. 3, and he succeeded in so turning his car as to avoid collision with that truck, but struck some of the furniture or whatever it was that truck No. 2 was loaded with, and his car was damaged by the collision.

He was carrying a policy of collision insurance, with the appellant, and after Sower had his car repaired, appellant paid the bill, and then instituted this action against Sower and the appellee, alleging in its petition the issual of the policy of insurance, the occurrence of the collision, and negligence of the appellee, and its payment of the damages resulting, setting up also its policy of insurance and the following provision thereof:

> "If the company shall claim that the loss or damage was caused by the act or neglect of any person or corporation, private or municipal, the company shall on payment of the loss be subrogated to the extent of such payment to all right of recovery by the assured for the loss resulting therefrom and such right shall be assigned to the company by the assured on receiving such payment."

It asked that Sower be required to file his policy as a part of the record and that it be permitted to recover from the appellee the $463.50 which Sower had paid to have the car repaired and which it, under its policy of insurance, had paid to Sower.

At the point where this collision occurred, the pike is about 30 feet wide. As Sower approached Frankfort he was traveling the right-hand side of this pike, and it was on this, the north, or right-hand side of the pike, that these trucks were parked.

No error is complained of on this appeal, except the action of the court in directing the jury to find a verdict

for the appellee, and four reasons are given to support the action of the court in giving this instruction.

First, the appellant failed to show the value of the car just before the collision and just after the collision. All appellant showed was that it had expended $463.50 for the repair of the car.

In the case of Robson v. Zumstein Taxi Cab Co., 198 Ky. 365, 248 S. W. 872, this court said: "Although the measure of damages was the difference in the market value of the taxi before and after the injury, and no witness testified as to its market value on either occasion, yet as it was clearly shown that the machine was injured and certain parts had to be restored, and that these parts cost something, it cannot be doubted that the evidence was sufficient to authorize a finding of nominal damages, and that being true, appellant was not entitled to a peremptory on the ground that no damage was shown." That is conclusive of the first reason given to sustain the action of the lower court.

The next reason given for sustaining the action of the court in giving this peremptory instruction is that no negligence of the appellee had been proved. The proof shows that they had no lights on these trucks. No. 2, including the furniture with which it was loaded, stuck out into and occupied about one-half of the highway, and this brings us to a consideration of whether or not it was negligence to leave this loaded truck on the highway without a light. By section 2739g-24, these trucks were required to have a red light in the rear and to have two lights in front when in operation. It is insisted that these trucks, when parked upon the roadside, were not in operation within the meaning of the statute. They were loaded with furniture or other property which the appellee had transported for Gardner, and these trucks were then parked at this point for the purpose of being unloaded, and while so being used, they were "in operation" within the meaning of the statute.

That this was the intention of the legislature is clearly shown from subsection three of section 2739g-24, because in this subsection the legislature provided that: "Cities or towns may by ordinance designate certain well lighted streets or parts thereof during certain periods, as being sufficiently illuminated to make lights on parked automobiles unnecessary, in which case para-

graphs 1 and 2 shall not apply to automobiles parked in such street during such period." From this language it is obvious that a motor vehicle when parked on the highway is in operation within the meaning of the statute.

In Commonwealth v. Henry, 229 Mass. 19, 118 N. E. 224, L. R. A. 1918B 827, it was held that an automobile standing on a city street after dark, with engine at rest, is within a statute prohibiting the operation of automobiles on the streets after dark without lights.

A similar conclusion was reached in Jaquith v. Worden (1913) 73 Wash. 349, 48 L. R. A. (N. S.) 827, 132 Pac. 33, where the court decided that an automobile, when stopped or left standing in the highway, did not cease to be "driven" within the meaning of a statute providing that "every automobile or motor vehicle when driven on any public road" between certain hours should have "at least one lighted lamp, showing white to the front and red to the rear." It was stated that it could not be said that the driver of such a vehicle must carry lights while it is moving, but that he may stop it during the hours of darkness in the roadway, turn off the lights, and leave it standing, without violating the law; that the statute must be read with reference to its plain spirit and intent; that its spirit cannot be destroyed by narrowing it to the literal meaning of a single word; that highways are designed for travel in all lawful ways, and that the driver of a vehicle does not cease to be a driver or traveler when he stops his machine in the street.

It is insisted that these automobiles thus parked upon the highway were no more dangerous than ordinary wagons loaded with hay or other produce, but the legislature has seen fit to make a distinction and we feel it had the right to do so, for while motor vehciles are very essential means of modern transportation, their use and operation are attended by great danger and many accidents have resulted therefrom. Even if the legislature had not seen fit to require a motor vehicle to be lighted in the nighttime on a highway, it would have been negligence to have left these trucks, or for that matter, to have left a wagon in the same position.

In the case of Cumberland Telephone & Telegraph Co. v. Yeiser, 141 Ky. 15, 131 S. W. 1049, this court said: "Except as to a few specific requirements, it is doubtful

if the statute imposes any greater duty upon drivers of automobiles than would be put upon them by the general principles of the law. Indeed we might safely say that the statutes . . . except in matters of detail, are largely declaratory of what the law was before they were written, and the duties of automobile drivers are not limited to those mentioned in the statute. If the driver should comply with all the requirements of the statute, he might yet be liable for the failure to exercise ordinary care to avoid injury to another traveler on the highway.''

In Bevis v. Vanceburg Telephone Co., etc., 121 Ky. 177, 89 S. W. 126, this court said: ''There is always reasonable ground for apprehending accidents from obstructions to a public highway, and any person who wrongfully places them there, or aids in so doing, must be responsible for such accidents as occur by reason of their presence. . . . Its presence in the road may not in the daytime imperil the safety of persons traveling the highway; but at night, and in the dark, there can be no question of danger therefrom to those upon the highway, and at all times it must be regarded as an obstruction to the highway. At any rate, whether it was an obstruction dangerous to those traveling the highway, and in consequence thereof a nuisance, was a question to go to the jury, and, under the testimony, it should have been allowed to do so.''

In Daniels v. Randolph County, 66 W. Va. 676, 72 S. E. 782, 37 L. R. A. (N. S.) 1158, the court said: ''In exercising ordinary care a traveler at night, in the absence of knowledge to the contrary, has the right to act on the assumption that the street or way is in a reasonably safe condition for travel by night as well as by day.''

In Linsley v. Bushnell, 15 Conn. 225, 38 Am. Decision 79, it was held that one who leaves a cart loaded with wood in the middle of a public road is liable for injuries caused to a traveler by reason of the obstruction.

In Fox v. Sackett, 10 Allen (Mass.) 535, 87 Am. Decisions 682, it was held to be negligence to leave a wagon in the highway and that a person injured by collision with a wagon in the nighttime, could recover of the owner thereof for the injuries so received.

We have concluded that there was evidence of negligence upon the part of appellee.

It is next insisted that the leaving of these trucks in the highway was not the proximate cause of the collision.

"A proximate cause is that cause which naturally led to and which might have been expected to produce the result.

"What is the proximate cause of the injury is ordinarily a question for the jury; and before the court can take it away from the jury and determine it, the facts must be such that fair minded men ought not to differ about them." Denker v. Pugh, 162 Ky. 818, 173 S. W. 139.

According to the evidence, this truck No. 2, the load of which was struck by Sower's automobile, occupied the entire right half of this highway, and that was the part of the highway which it was the duty of Sower to use, as the left half of this highway was for the use of vehicles going in the opposite direction. When Sower passed the first truck, he probably endeavored to return to the right-hand side of the highway. It was his duty to do so, and if in so doing, and in using ordinary care, he was unable to see the obstruction which the appellee had left unguarded in the highway, and the collision resulted, then the leaving of that obstruction was the direct and proximate cause of this collision.

When Sower turned to the left to avoid collision with truck No. 3, the lights of his car were necessarily also thrown to the left side of the highway, and when he turned back to the right, he was perhaps in contact with truck No. 2 before his lights illuminated same.

It is next insisted that this collision was the result of the contributory negligence of Sower. "Negligence is a question of fact and not of law. Whenever there is any doubt as to the facts, it is the province of the jury to determine the question; or whenever there may reasonably be a difference of opinion as to the inferences and conclusions from the facts, it is likewise a question for the jury." Passamaneck's Admr. v. Louisville Ry. Co., 98 Ky. 195, 32 S. W. 620, 17 Rep. 763.

These trucks were obstructing that part of the highway that Sower not only had a right to use, but it was his duty to use, and as these trucks were without any light to give notice of their presence, when Sower dis-

covered them, he was facing an emergency, and if in that emergency he failed to adopt the best and safest plan to avoid collision, the appellee is not thereby excused.

The rule is that when a person has been placed in a position of peril by the negligence of another, and must act in an emergency, the fact that he does not adopt the course best for his safety will not preclude a recovery, provided he acts with such care and judgment as may be reasonably expected of a person of ordinary prudence under like circumstances. I. C. R. R. Co. v. Cotter, 103 S. W. 279, 31 Rep. 679.

We therefore conclude that the court erred in directing the jury peremptorily to find for the appellee. This appeal is granted. The judgment is reversed and the cause remanded with directions to award the appellant a new trial and for further proceedings consistent with this opinion.