## Robinson Transfer Company v. Turner.

(Decided May 24, 1932.)

182

WESLEY V. PERRY for appellant.

COLEMAN E. TAYLOR and OSCAR M. SMITH for appellee.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—Reversing.

About 1 o'clock on a Sunday night in August, 1930, the appellee, Ellis Turner, suffered the fracture of both legs and the destruction of his automobile when his machine driven by a friend collided with the rear end of an automobile transport truck belonging to the appellant, B. N. Robinson, doing business as Robinson Transfer Company. A judgment for $3,000 in plaintiff's favor is appealed by the defendant.

Appellant's machine, consisting of a truck and trailer, was 65 feet in length. The body of the trailer was two steel channels, 50 feet in length, into which the wheels of automobiles being transported rested. The machine involved in the accident was one of a fleet on its way from Paducah to Louisville to secure a cargo of automobiles. The driver lost his bearings within the

city of Russellville due to having had to enter on a detour. While driving west on Ninth street and in preparing to turn to the right into Nashville street, because of the length of the machine, it was swung around and over to the left on the south side of Ninth street. It was stopped there while one of the men on it walked across the street intersection to look at a traffic sign in order to find the way out of the city. According to his evidence the machine was stopped parallel with and about 3 feet from the curbing, with the front end about even with the east line of Nashville street. According to the evidence of plaintiff and his companions the machine was left standing diagonally across the street, headed northwesterly, with the rear end about 4 feet from the south or left-hand curbing and the front protruding several feet over the center line of the street, which was 30 feet in width, thereby completely blocking the left side of the street and partially obstructing the right side. According to some of the witnesses who arrived quickly upon the scene of the accident, and who were not as much interested in the case as the participants, the machine was at a slight angle—less than that described by appellee and more than that stated by appellant's witness. At any rate, it is made manifest that this 65-foot truck obstructed practically all of the left side of the street but with substantially all of the right lane for traffic open.

The plaintiff and two other young men since early in the evening had been driving aimlessly about the city in his car and they admit they had been drinking moonshine whisky. But there is evidence to corroborate their statements that none of them was intoxicated. On the other hand, there is much substantial evidence to show that at least the plaintiff and Hughes, the driver of his car, were under the influence of liquor. Earlier in the evening, and also about an hour before the accident, these boys had been told by a policeman to go home.

The plaintiff and his companions testified that they were driving west, on the right-hand side of Ninth street, with the lights fully burning and going at a rate of about 35 miles per hour. Turner testified that although there was a street lamp at the intersection, the big truck was in the shadow of the trees, "and as we were going down the street about thirty-five miles an hour and saw the truck and we started to go by it on the right-hand side, and as we turned we were so near the end of the iron rails—we did not see the iron rails— and as we turned

one of the iron rails came right through the car and caught my legs between the side of the car and broke both of them.'' The iron rails referred to were the steel channels of the trailer. He was not able to say whether the headlights on the truck were burning, but was positive there was no red light on the rear end and that they got within 15 or 20 feet of the trailer before he noticed it and then called out to Hughes. About that moment Hughes applied the brakes and endeavored to pass around to the left of the trailer, when it struck the end of one of the steel channels, which passed through the side of the automobile and injured him, as stated. Hughes testified that he was about 20 to 25 feet from the truck and trailer when he ''looked up and saw it.'' The front lights were burning but there was none on the rear end. He did not undertake to pass to the right of the big car, although there was ample room, but turned quickly to go to its left and was deceived by the length of the machine. However, it was while trying to pass between the rear of the truck and the curbing that he struck the end of it. Davis on the back seat, did not see the truck until Turner holloed to Hughes just as the collision occurred.

Riley, the man in charge of the defendant's truck, testified that as he was returning to it from examining the signboard, he heard the noise of an exhaust horn on a rapidly approaching automobile, and as it came over a little rise about 600 feet away it continued to come, blowing the horn all the while, at a speed estimated to be from 50 to 60 miles an hour. It was on the left-hand side of the street and struck the left rear corner of the truck, which was that nearest the curbing, as he was getting into the cab with the driver. The machine as stated by him, was parallel with the curbing and no part of it extended beyond and to the right of the center of the street. As he saw the car approaching he noticed that both red lights on the rear of the truck were burning as well as were the headlights. A citizen living near by, who had not retired, testified to hearing the exhaust horn of an automobile as it approached at a very rapid speed. The sound suddenly stopped and in its place he heard the screech of brakes and then the impact. He and other gentlemen who came promptly to the scene of the accident testified that there were marks on the asphalt street, which was dry, indicating that plaintiff's automobile had skidded or dragged on locked wheels 50 to 60 feet before it struck the truck.

The boys denied they were blowing the horn, although testifying it was equipped with an exhaust horn.

It will be observed that the evidence as to negligence and contributory negligence was conflicting. Hence, it was not error to refuse the defendant a peremptory instruction. Padgett v. Brangan, 228 Ky. 440, 15 S. W. (2d) 277.

A number of instructions were given, including one under the last clear chance doctrine to the effect that if the jury believed that the plaintiff was contributorily negligent they should find for the defendant, unless his agents in charge of his truck perceived plaintiff's danger or by the exercise of ordinary care could have perceived it and could have prevented the same by ordinary care and failed to do so, whereby the injury happened. It is true that Riley testified that he saw plaintiff's car coming at 60 miles an hour on the same side of the street that the truck was on and that neither he nor the driver gave its occupants any warning. He stated that this was because he did not have time and assumed the approaching car would turn to the right side of the street where it belonged. The circumstances corroborate this verbal testimony. The plaintiff and his driver testified they did not discover their own peril until a moment before the collision, and it cannot be said that the defendant's agents did so or should have done so any sooner. The doctrine of discovered peril or the "last clear chance" is founded upon the humane idea that though the plaintiff may be in fault, if his peril be realized by the defendant, or through culpable carelessness he is oblivious to it, and he (the defendant) then has an opportunity by the exercise of due care to avert the accident, he should do so, and his failure to embrace the final chance of avoiding it makes him responsible for the consequences, and the contributory negligence of the injured person becomes immaterial. Louisville & N R. Co. v. Cornett's Admr., 237 Ky. 131, 35 S. W. (2d) 10. The court is of the opinion that the case did not authorize a qualification of the contributory negligence instruction on this theory.

The appellee directs attention to section 2739g-42 of the Statutes, relating to the duties of a driver of vehicles turning to the right to keep to the right of the center of a street intersection, and argues that there was a clear violation of that duty in this instance. We hardly think it applicable, for this car was not in the act of turning at the time of the collision but was stationary. It

186

was stopped, though on the wrong side of the street, and, according to plaintiff's evidence, was occupying all of the street to the left of its center. There is no evidence of any city ordinance prohibiting the parking of automobiles without lights as is authorized by section 2739g-24 of the Statutes. Nor do the provisions of section 2739g-48, relating to stopping a motor vehicle on the highway, apply to a city street. Kimble v. Standard Oil Co., 235 Ky. 169, 30 S. W. (2d) 890. Section 2739g-24 requires that automobiles in operation must have on the rear one lighted lamp showing red, visible from the rear 200 feet away. This machine was "in operation" within the meaning of the statute. Hardware Mutual Casualty Co. v. Union Transfer & Storage Co., 205 Ky. 651, 266 S. W. 362. Section 2739g-30 provides that a trailer shall carry at least one lighted lamp on its left side in such manner as to show a green light to the front and a red light to the rear, visible 200 feet.

According to the effect of plaintiff's evidence, the negligence of the defendant was in having failed to exercise ordinary care to prevent injury to travelers by obstructing the roadway as described, and in not having the lights burning on the rear and left side of the car, which is the minimum provided by statute. Perhaps also, as a violation of the common law duty to exercise ordinary care generally, the jury may have concluded that this modern dinosaur should have carried additional lights or there should have been other warning of danger. According to the effect of defendant's evidence, the contributory negligence of the plaintiff and his agent, the driver of the car, was in driving the automobile on the wrong side of the street while under the influence of liquor, in exceeding the statutory speed limit, and in not keeping it under control, or exercising due care for their own safety under the circumstances.

The instructions given contained references to several conditions and duties which do not appear to have been involved. It seems to us that upon another trial, the evidence being substantially the same, the instructions should be confined to the specific duties and theories suggested and the general duty to exercise ordinary care, together with the right of plaintiff and his agent driving the car, when they suddenly found they could not pass to the left of the truck, to have acted in the emergency by doing all they reasonably could under the circum-

stances to avoid the collision, provided that the plaintiff himself and his driving companion were free from culpable negligence. But if plaintiff created the emergency through his own or driver's negligence, the benefit of this law is denied him. Louisville Taxicab & Transfer Co. v. Reno, 237 Ky. 452, 35 S. W. (2d) 902. See Adams v. Parish, 189 Ky. 628, 225 S. W. 467; Hardware Mut. Casualty Co. v. Union Transfer & Storage Co., supra.

We think the court properly declined to give the instruction offered by the defendant designated as instruction No. 10, defining "joy riding" and relating to the assumption of risk in voluntarily riding with an intoxicated driver, as the essence of the offered instruction was embodied in one that was given.

Over objection the plaintiff was permitted to introduce evidence that the tail-light on a truck of the appellant company, like the one involved in this act (but not identified as this particular one), was not burning at a point 5 or 6 miles out of the city and at another point near or within the city limits. The defendant had proven, without objection, that an inspection of these trucks made twelve hours before in Paducah, and of this particular truck at a point about 8 miles from Russellville, was made and the lights were found to be burning and in good condition. It will be well upon another trial to keep out all of this evidence, as the question will be whether the lights were burning at this particular time and place.

For the reasons given the judgment is reversed.

PERRY, J., not sitting.