ROSAMOND HUNTER v. WILLIAM H. PRESTON ET AL.

February Term, 1933.

Present: POWERS, C. J., SLACK, MOULTON, THOMPSON, and GRAHAM, JJ.

Opinion filed May 2, 1933.

*Austin & Edmunds* for the defendant Alvin R. Midgley.

*Chas. F. Black, Robert W. Ready,* and *J. Boone Wilson* for defendants Preston and Hinsdale.

*Aaron H. Grout* and *A. Pearley Feen* for the plaintiff.

SLACK, J. The plaintiff seeks to recover for personal injuries that she sustained when defendant Midgley's car in which she was riding as a guest passenger collided with a car operated by defendant Preston about 8.30 o'clock in the evening of December 25, 1931, on North Avenue in the city of Burlington.

The declaration as amended alleges, in substance, in paragraph 2, that defendant Hinsdale drove his car south on said avenue and parked it, unattended, on the westerly part of the traveled portion of the street in a manner to prevent a car passing in either direction on that street provided another car was standing thereon opposite his car; that the headlights on his car were so adjusted that they would throw a glaring light in the eyes of the driver of a car approaching from the opposite direction, and that they were left in that condition when the car was parked; that such careless and negligent acts on his part, without fault of the plaintiff, caused her injuries.

The following paragraph alleges that defendant Preston drove his car north on said avenue, and stopped it on the paved part thereof, alongside and within a short distance of Hinsdale's car in a manner to prevent a car traveling in either direction on that street from passing the Preston car when another car was standing on the west part of the street opposite his car, and so that a view of his car was obstructed and hidden by the glaring lights of the Hinsdale car from the driver of a car coming from the south; that Preston's car did not have a tail light or any signal light on the rear thereof; and that such careless and negligent acts of Preston caused plaintiff's injuries, without her fault.

Paragraph 4 alleges that defendant Midgley operated his car in a grossly and wilfully careless and negligent manner, in that he drove it on an icy and slippery street without chains to prevent it from slipping and skidding; that he drove too fast considering the condition of the street; that his brakes were inadequate and out of repair, and that he did not have his car under proper control; that by reason thereof it collided with

the Preston car and caused the plaintiff's injuries, without her fault.

Paragraph 5 alleges that "wholly because of the negligent acts hereinbefore described, resulting in the collison hereinbefore set forth," plaintiff sustained the injuries complained of, enumerating them.

Paragraph 6 alleges "that the aforesaid negligent act of said defendants * * * * jointly and severally caused the accident hereinbefore described, and were the joint and several cause of the injuries to the plaintiff hereinbefore complained of," etc.

The case was tried on the general issue as to each defendant. Plaintiff had a verdict and judgment against all the defendants.

At the close of the evidence Hinsdale moved for a directed verdict on the grounds that (1) in her declaration, as amended, plaintiff declares against the defendants both jointly and severally; and that there is a misjoinder of parties defendant; (2) that the evidence viewed in the light most favorable to the plaintiff did not show negligence on his part; and (3) that the evidence showed no conduct on his part which, if negligent, was the proximate cause of the accident.

Preston moved for a directed verdict on practically the same grounds.

Both motions were denied, and each defendant excepted.

The questions presented by Hinsdale's motion are first considered. He contends that the declaration sets forth causes of action against the three defendants *severally* and in separate counts, which is not permissible. The declaration is not open to such construction. While the negligent acts of the different defendants, relied upon as constituting a joint cause of action, are set forth in separate paragraphs of the declaration in which also appears an allegation that such acts caused plaintiff's injuries, the declaration contains but a single count. That this is so is apparent from the fact that in none of what are termed separate counts is there an allegation respecting the nature and extent of plaintiff's damages. The only allegation regarding damages, follows all allegations of the negligence of the different defendants.

It is also claimed that, if the declaration contains but one count, there is a misjoinder of parties defendant because the sixth paragraph alleges that the defendants jointly and severally caused the injuries complained of. While this is inapt lan-

guage, it is plain that the declaration as a whole charges a joint liability only.

█ All that is necessary to constitute a good declaration under G. L. 1791 is that it set forth in brief and simple language the facts relied upon and the relief demanded. While more brief and simple language might have been used to state the facts relied upon by plaintiff as constituting joint liability of defendants, such, in effect, is what the allegations amount to. Moreover, G. L. 1798, provides that "an action shall not be defeated because of nonjoinder or misjoinder of parties or misjoinder of causes of action, * * * * but the fault, if pointed out, shall be corrected under the direction of the court."

██ The first question under the second ground of the motion is whether the provisions of No. 79, Acts of 1931, apply to cities and villages. The material parts of that act read:

"A person shall not * * * * park nor leave standing any vehicle whether attended or unattended, upon the paved or improved or the used part of any highway, so as to interfere with traffic on such highway except because of some engine, mechanical or other trouble which renders it impossible to move such vehicle on its own power, and except near railway grade crossings and in cities and villages, where local traffic ordinances and regulations shall govern."

The plaintiff contends that since it did not appear that the city of Burlington had traffic ordinances and regulations governing the parking of cars on its streets, the provisions of this act apply, while Hinsdale insists that the act does not apply to cities and villages, even though they have no ordinance or regulation regarding the matter. Neither party has cited a case that sheds any light on the question. There are but few such cases. The one most in point is *Kimble* v. *Standard Oil Company*, 235 Ky. 169, 30 S. W. (2d) 890, 891. The statute of that state, section 2739g-48, which is part of the Motor Vehicle Act, provides that: "No person shall stop a vehicle or leave same standing or cause or permit same to stop or to be left standing upon the main traveled portion of any highway," etc. Section 2739g-I, which is part of the same Act, provides, in

effect, that the word "highway" as used therein shall mean all highways, roads and streets in the state. Notwithstanding the latter statute, it was held that the former did not apply to city streets. After referring to the fact that city streets are usually paved from curb to curb and all of the street is ordinarily used for travel by motor vehicles the court said, "Parking on city streets under modern conditions is necessary, and since the Legislature, * * * * only prohibited parking on the main traveled portion thereof, it is clear that it did not mean that the prohibition should apply to the streets of a city. * * * * In the absence of a city ordinance controlling the subject, parking a motor vehicle on the street is not an unlawful act." This case is cited with approval in *Robinson Transfer Co.* v. *Turner,* decided in May, 1932, 244 Ky. 181, 50 S. W. (2d ed.) 546. See, also, *Joseph* v. *Schwartz,* 128 Wash. 634, 224 Pac. 5. The Uniform Regulating Traffic Act, which has been adopted by several of the states, provides: "No person shall park or leave standing any vehicle, whether attended or unattended, upon the paved or improved or main traveled portion of any highway, outside of a business or residential district," etc. Uniform Laws Annotated, Vol. 9, page 359, § 50. That act leaves to business and residential districts the right to regulate the matter to meet the requirements of local conditions, provided, of course, that such regulations are reasonable. The meaning of the act under consideration is not as clearly expressed as it is in the act referred to, but since cities and villages are empowered to regulate the parking of cars on the streets and highways within their limits, No. 84, Acts of 1931, we hold that the provisions of the act in question apply only to highways outside such municipalities, regardless of whether or not they have local traffic ordinances. As is said in the Kentucky case, parking on city streets is necessary under modern conditions. To extend the provisions of this act to cities and villages would, in effect, prohibit such parking whether it be in front of the operator's residence, a church, the post office, or elsewhere. This the Legislature never intended. It is urged that it is only such parking as interferes with traffic that is forbidden, but all parking on city or village streets interferes with traffic, more or less. Hinsdale left his car on the west side of the street, which was eighteen feet wide, to do an errand that took him to the opposite side of the street. There was then no other car in sight in either direction. In

the absence of a city ordinance prohibiting it, the leaving his car as he did, was not an unlawful act.

■ The next question is whether the evidence fairly and reasonably tended to support the allegation regarding his lights. He says that there was no evidence that his lights were out of adjustment, and that the undisputed evidence showed that his dimmers were on. The plaintiff introduced no direct evidence touching either question, but her evidence regarding the glare of the lights tended to show that they were neither properly adjusted nor dimmed.

The plaintiff, Midgley, and his wife were riding on the front seat of the Midgley car as they approached the place of accident, Midgley at the wheel, the plaintiff on the right side and Mrs. Midgley between her husband and plaintiff. The plaintiff testified that as they went around the curve she saw the lights of Hinsdale's car; that they were then so far away that they did not affect her, but that as they neared them "they were very bright and they blinded me"; that this occurred somewhere between the curve and the first house on the right of the street. It appeared from other evidence that it was between 600 and 700 feet from the curve, and approximately 250 feet from the house referred to by plaintiff, to the Hinsdale car.

Mrs. Midgley testified as follows: "Q. What, if anything, did you see, as you went around the curve? A. The brilliant lights of the Hinsdale car. Q. Whether or not those lights glared in your eyes? A. To an extent that I didn't see anything else on the highway with the exception of the lights from his car." Midgley testified: "Q. From the curve to the point of collision, the road was perfectly straight, was it not? A. Approximately straight, yes sir. Q. There was nothing to interfere with your view, was there? A. View of what? Q. View of the road ahead of you? A. The Hinsdale car—lights of the Hinsdale car. Q. The lights of the Hinsdale car interfered with your view down the road? A. Yes, sir. Q. Because of their brightness? A. Yes, sir. * * * * Q. At what point, after you passed the curve, did the lights of the Hinsdale car begin to blind you? A. Do you mean by 'blind' glaring in my eyes so that I couldn't see anything? The Court: You have testified that the lights from the Hinsdale car bothered you, obstructed your view. Now Mr. Grout wants to know where

336

they begun to have that effect on your vision. A. Immediately after I rounded the curve. Q. And continued to blind you until you were within the distance that you have testified to from the Preston car? A. Yes, sir. Q. What is that distance again, please? A. Between 35 and 50 feet.''

On this evidence the question of whether Hinsdale was negligent in the way he maintained and operated his lights was clearly for the jury.

 So, too, was the question of whether his negligence, if any, was a proximate cause of the accident. It is well settled that there may be more than one proximate cause in a case of this character. *Woodcock's Admr.* v. *Hallock*, 98 Vt. 284, 127 Atl. 380; *Spinney's Admx.* v. *Hooker & Son*, 92 Vt. 146, 102 Atl. 53. It is equally well settled that, where two or more proximate and efficient causes combine to produce an injury, a recovery may be had if the defendant is responsible for any one of them, though he is not responsible for the others. See cases last cited, and *Blanchard* v. *Shade Roller Co.*, 84 Vt. 442, 79 Atl. 911. And ''Whenever the separate and independent acts or negligence of several persons, by concurrence, produce a single and indivisible injury which would not have occurred without such concurrence, each is responsible for the entire result, and may be sued jointly or severally, at the election of the party injured. In such cases, the act or neglect of each is a proximate and efficient cause, and when several proximate causes contribute to an injury, and each is an efficient cause, without the operation of which the injury would not have been caused, it may be attributed to any or all of such causes.'' *Sharon* v. *Anahama Realty Corp. et al.*, 97 Vt. 336, 123 Atl. 192. To the same effect are *Drown* v. *New England T. & T. Co. et al.*, 80 Vt. 1, 66 Atl. 801; *Dufur* v. *Boston & Maine Railroad*, 75 Vt. 171, 53 Atl. 1068; and *Wright* v. *Cooper et al.*, 1 Tyler, 425. Whether the accident would have happened irrespective of Hinsdale's negligent operation of his lights or whether it was caused by the concurrence of such negligence with the negligence of the other defendants was a question for the jury, since the evidence tended to support the latter theory. The motion was properly denied.

 What has been said disposes of all questions raised by Preston's like motion except that of his negligence. He stands the same as Hinsdale so far as No. 79, Acts of 1931,

is concerned. No. 69, Acts of 1929, provides that a motor vehicle shall not be operated on a public highway in a careless or negligent manner. This is declaratory of the common law of negligence. The evidence tended to show that Preston knew where the Hinsdale car was standing, and knew that its lights were on, when he stopped his car; that he stopped his car, partly on and partly off the used portion of the east side of the street, just south of the Hinsdale car, and so close to it as to prevent the passing of other cars in either direction on that street, and that the tail lights of his car were not lighted. Whether in the circumstances Preston was negligent in stopping his car where he did was a question for the jury. So, too, was the question of whether his negligence, if any, was a proximate and efficient cause of the accident. His motion was properly denied.

At the close of the evidence these defendants moved that plaintiff be required to elect which of the defendants she would proceed against. This motion was denied and defendants excepted. Enough has been said to show that the denial of the motion was not error.

At the close of the evidence Midgley moved for a directed verdict on the ground that the evidence failed to show that he operated and managed his car in a grossly and wilfully negligent manner in respect to any duty which he owed the plaintiff. The motion was denied and he excepted. Midgley testified that the streets were icy and slippery, and that he had observed the difficulty experienced by others because of that condition, both those in cars and those on foot; that he did not have regular chains on his car, but had "strapped on chains of only one link"; that he saw Hinsdale's lights when he rounded the curve; that they blinded him, and continued to do so until he was within 35 to 50 feet of Preston's car; that he was then traveling 15 miles an hour, and could have stopped his car in 2 or 3 feet on a *"fair"* pavement. Other evidence tended to show, however, that he was traveling from 35 to 40 miles an hour when 75 feet from Preston's car; that he applied his brakes at that point with such force that his wheels made a "very perceptible" mark on the street from there to Preston's car; and that his car, which was a Ford Sedan, struck the Preston car, which with its then load, weighed approximately

3,500 pounds, with sufficient force to move it ahead its full length, and badly damage both cars.

What constitutes gross negligence and wilful negligence within the meaning of No. 78, Acts of 1929, has been so recently stated by this Court that it need not be repeated. *Sorrell* v. *White,* 103 Vt. 277, 153 Atl. 359; *Shaw, Admr.* v. *Moore,* 104 Vt. 529, 162 Atl. 373; *Franzoni* v. *Ravenna,* 105 Vt. 64, 163 Atl. 564. The evidence against Midgley made a case for the jury on the question of gross negligence, but not on the question of wilful negligence. It is said in *Sorrell* v. *White, supra,* 103 Vt., at page 284, 153 Atl. 359, 369: "To be wilfully negligent, one must be conscious of his conduct and, although having no intent to injure, must be conscious, from his knowledge of surrounding circumstances and existing conditions, that his conduct will naturally and probably result in injury." That Midgley was conscious of his conduct, that is, that he knew the condition of the street, the condition of his chains, his speed, and the effect of Hinsdale's lights on his vision cannot be doubted; but neither he nor those riding with him knew that Preston's car was in his pathway until it was too late to avoid hitting it. He could not, therefore, have been conscious, from his knowledge of surrounding circumstances and existing conditions, that his conduct would naturally and probably result in injury. The evidence did not show such an intentional disregard of a known duty necessary to the safety of the person or property of another as to make a case of constructive or legal wilfulness such as charges a person whose duty it is to exercise care with the consequences of a legal injury.

The Court charged the jury that Hinsdale violated the provisions of No. 79, Acts of 1931, in parking his car as he did, and that that was a circumstance that might be taken against him. This was excepted to. For reasons stated it was error.

Midgley requested the Court to charge that there was no evidence on which the jury could find him guilty of wilful negligence. This the Court refused to do, and submitted that issue to the jury, to which Midgley excepted. This exception must be sustained.

This disposes of all questions briefed.

The errors noted require a reversal as to Hinsdale and Midgley, and we think in the circumstances that justice requires

a general reversal. Where there are two or more defendants, and the judgment is based upon a cause of action of such a nature that it might work injustice to one, if it were to remain intact against him while reversed for error as to the others, the Court may, to prevent possible injustice, reverse the judgment *in toto,* and grant a new trial as to all. *Bradley* v. *Blandin and Somerset Land Co.,* 94 Vt. 243, 256, 110 Atl. 309.

*Judgment reversed as to all defendants, and cause remanded.*