TOWNLEY, ADMR., APPELLEE, v. THE UNION FORK & HOE CO.; THE A. G. MILLER CO., APPELLANT.

(Decided December 6, 1938.)

*Mr. J. W. Jacoby,* for appellee.

*Mr. W. H. Jones* and *Mr. F. M. Marriott,* for appellant, The A. G. Miller Company.

SHERICK, J. Plaintiff, as administrator, for the benefit of next of kin, instituted this action for the wrongful death of his six year old son. The petition charged the defendants jointly with seven specific acts of claimed negligence, five of which become relatively unimportant as will be hereinafter demonstrated. Before proceeding to a statement of the issues made and the question propounded, it is imperative that the unique facts of the case be first enumerated:

The Union Fork & Hoe Company owned two trailer trucks. Late in the afternoon of the July day in question, the two trucks were being operated by two employees of The A. G. Miller Company in hauling logs. These trucks were, at the time, being driven northerly on state route No. 37, which follows the course of Granville street in and through the incorporated village of Sunbury. The village had never enacted any legislation prescribing the parking of vehicles on its streets.

At a point on Granville street where its course was straight and slightly upgrade, stood a parked cattle truck headed south on the west side of the street. The hoe company's first truck, driven by one Penhorwood, the servant of the Miller company, upon entering the village was caused to be parked on the east side of the street opposite the cattle truck. The front and rear right wheels of Penhorwood's truck rested from one to two feet from the east curb. Granville street is 26 feet in width, and is curbed and paved from curb to curb. Sidewalks have been laid up to the curb on each side. The unoccupied distance between the two parked trucks was from 10 to 11 feet.

From 5 to 15 minutes after the parking of the first company truck, its second truck, operated by one Hammond, approached and was driven between the parked trucks. When Hammond's truck came abreast of Penhorwood's truck, plaintiff's young son, rounding the front of Penhorwood's truck, suddenly appeared in front of and was struck by Hammond's vehicle and was killed. The picture made by this recitation represents conceded facts.

For the purpose of simplification and clarity it is now stated that The Union Fork & Hoe Company's motion for a directed verdict in its favor, made at the conclusion of plaintiff's case, was sustained. Plaintiff has not appealed from this order. The hoe company may therefore be elided from the picture.

Returning to a consideration of the plaintiff's specifications of negligence, we find the first to be thus stated:

"Said Francis Penhorwood unlawfully, carelessly and negligently parked the truck owned as aforesaid by The Union Fork & Hoe Company, and operated as aforesaid, in such a manner as to obstruct the view of pedestrians' of oncoming motor vehicles and with the front and rear wheels thereof more than one foot, to wit, two feet from the improved portion of said highway."

The second specification reads as follows:

"Said Francis Penhorwood and J. H. Hammond recklessly and negligently failed to heed the no parking signs placed along said highway as aforesaid by the highway department of the state of Ohio."

It is noted from previously pleaded matter that three of these signs were erected on the east side of the street, two south and one north of the scene of the accident. These signs recited: "Parking on Traveled Highway Prohibited."

The five remaining claims of misconduct are all directed towards the operation of the moving truck driven by Hammond.

It is further expedient at this time to state that a general verdict was ultimately rendered by the jury against the Miller company, in plaintiff's favor, upon which judgment was entered. This verdict, however, was searched by several interrogatories. The first of which, with the answer thereto, is as follows:

"Question No. 1. Was the defendant, The A. G. Miller Company, guilty of negligence which was the proximate cause of the death of Marshall Townley and, if so, of what did such negligence consist?

"Answer 1. Yes. It consisted of parking the log truck in a manner which caused a hazardous condition at that point."

Inasmuch as a jury's special finding controls its gen-

eral verdict when its conclusion is unambiguous, as we so find in this instance, it is negatively clear that the jury found adversely to plaintiff on its last five specifications of negligence. It thereby exonerated the Miller company, and its employee, Hammond, from all blame or fault in the operation of the moving truck. It thereby found, even if the traveling vehicle was being operated in a negligent manner, that its operation was not a proximate or contributing cause to the death of the child. This conclusion being inescapable, it necessarily follows that the Miller company's attack upon the judgment entered on the verdict must and can only be successfully repelled by the record's strength upon the issue of negligence as made by specifications one and two, and the soundness of plaintiff's legal tenet upon which his claim of negligent conduct is grounded, for the reason that the Miller company complains primarily of the trial court's refusal to sustain its motions for a directed verdict, for judgment on the special finding, and for judgment *non obstante veredicto*.

The first hurdle, therefore, which this court encounters, presents the legal query: Is one liable to respond in damages to another for the parking of his vehicle on a street, other than at a street intersection of an incorporated municipality which has not enacted regulatory legislation in respect thereto, if that other, in the absence of contributory negligence, enters thereon in front of the parked vehicle and is injured by an approaching vehicle because of obstructed vision? In other words, may the pedestrian recover damages from the owner of the parked vehicle by virtue of the provisions of Section 6310-27, General Code, if he himself is not negligent, or, has the statute application within an incorporated municipality?

If the statute does not apply in such instance, then it must of course follow that the division of highways had no right to erect the signs prohibiting parking within the village other than as a warning to travelers;

neither did the municipal authorities possess such a right in the absence of appropriate municipal legislation.

Let it be known, before proceeding further, that we have painstakingly analyzed the averments of the plaintiff's petition to ascertain whether it pleaded a charge of common-law negligence with respect to the parking of the truck. Clearly it does not. Specification of negligence No. 1 is definitely predicated on the averred fact of the distance of the parked truck's right wheels from the curb. It employs in fact the exact words of the statute. It was so treated throughout the trial, as is evidenced by paragraph five of the court's general charge which is followed by quotation of the statute. Had common-law negligence been an issue in this case, this court would have reached a like conclusion as is hereinafter to be announced, but upon a different process of reasoning which would have necessitated a remanding of the cause for retrial.

On April 5, 1923, the Legislature passed an act "providing for the enactment and codification of laws relating to rules of the road, traffic regulations and the regulation of the operation of motor vehicles." 110 Ohio Laws, 135. The act in part repealed, amended and supplemented four independent, unrelated sections, one of which was Section 6290, subsection 8, General Code, which for the first time, in respect to motor vehicles, defined the term "public roads and highways" to "include all public thoroughfares for vehicles." 108 Ohio Laws (Pt. 2), 1078, passed December 16, 1919. This section (Section 6290, General Code) as amended in 110 Ohio Laws, 135, read: "9. 'Public roads and highways' for vehicles include all public thoroughfares, bridges and culverts."

As a part of the act of 1923, Section 6310-27, General Code, came into being. It provides:

"No vehicle shall stop on any road or highway, except with front and rear right wheels within one foot

of the right hand side of the improved portion of the road, nor in any such way as to obstruct a free passage of the road; provided that nothing in this section shall be held to apply whenever a driver of a vehicle is compelled or permitted to stop by reason of other lawful regulations, or emergency.''

This section, as well as its correlated sections, had for its purpose the creation of uniform rules to be followed by those who used the public highways of the state. It contemplated, in its major aspect, traveling, that is vehicles in motion on the highways, as counterdistinguished from non-moving vehicles or those parked for temporary purposes. It was intended, as was held in *Elms* v. *Flick,* 100 Ohio St., 186, 126 N. E., 66, that half the improved portion of a road should be kept clear for passage of vehicles. The act, however, did not contemplate any parking on the improved portion of a highway other than for temporary needs and necessity. This is evidenced by a long line of judicial decisions which leads to but the one conclusion that the act's purpose and intent was to keep the improved portion of roads and highways open and unobstructed.

The Legislature knew, as do the courts, that parking in city streets, for indefinite periods, is a public necessity, which must be regulated in accordance with particular local conditions, such as traffic, width of streets, intersections, building construction, deliveries, public buildings, police and fire appliances and many other matters, and which could not be prescribed by general law. But it was possible and necessary, since the rural inhabitants of the state could not enact regulatory legislation, to pass laws requiring the prescribed manner of use of highways outside of incorporated municipalities. To that end the state acted, as have also most municipalities, by enacting ordinances pertaining to parking, creating restricted zones, both as to time and place, and directing the manner of parking, in some cities in the middle of the street, or parallel or diag-

onal to the curb. Many municipalities prescribe vary-ing distances between wheels and curb.

Long prior to the advent of automobiles or state su-pervision of roads, municipal corporations were granted "special power to regulate the use of the streets." Section 3714, General Code, so declares. They, with but few exceptions, build these streets without expense to the state. They are made responsible by the same section for a failure to "cause them to be kept open, in repair, and free from nuisance." This section was in no way amended by the act of 1923. Surely auto-motive freight caravans may not now block city streets which happen to be through intercounty highways' or main market thoroughfares, by parking trucks within one foot of the curb, in defiance of municipal authority, irrespective of the street's width and traffic conditions, under the claim of the state's preemption of that field. If such were possible or true all ordinances providing for the manner of parking would perhaps be void.

Blashfield in his Cyclopedia of Automobile Law and Practice, Volume 2, Section 1193, at page 329, dis-courses on the question now at issue. It will be found that the view herein expressed finds precedent in *Robinson Transfer Co.* v. *Turner*, 244 Ky., 181, 50 S. W. (2d), 546; *Kimble* v. *Standard Oil Co.*, 235 Ky., 169, 30 S. W. (2d), 890; *Hunter* v. *Preston*, 105 Vt., 327, 166 A., 17; and *Joseph* v. *Schwartz*, 128 Wash., 634, 224 P., 5. We find, however, in *Neeley* v. *Bock*, 184 Wash., 135, 50 P. (2d), 524, that its prior decision is distinguished and a different conclusion reached be-cause of subsequent statutory amendment sufficient unto itself to embrace city streets within the definition of public roads and highways in the matter of parking. Suffice it to say, we find no such language within the Ohio statutes which should lead us to a conclusion other than is herein reached.

It follows that the trial court should have sustained the appellant's respective motions.

The judgment is reversed and final judgment entered for the appellant.

*Judgment reversed.*

MONTGOMERY, P. J., and LEMERT, J., concur.