CRAWFORD TRANSPORT COMPANY, Inc., Appellant,

v.

Raymond WIREMAN, An Infant Suing By His Next Friend, Ward Wireman, Appellee.

CRAWFORD TRANSPORT COMPANY, Inc., Appellant,

v.

Russell WIREMAN, Appellee.

Court of Appeals of Kentucky.

May 27, 1955.

Stoll, Keenon & Park, Lexington, Lovel Lisles, Greenup, for appellant.

Coldiron & Warnock, Greenup, for appellees.

STANLEY, Commissioner.

The appeals are from judgments of $5,500 for personal injuries of the appellee, Raymond Wireman, and $750 for damages to the automobile of the appellee, Russell Wireman. The material facts are undisputed, but the law applicable is vigorously disputed.

The appellant, Crawford Transport Company, contends it was entitled to a peremptory instruction upon the grounds of its freedom from negligence, contributory negligence of the motorist who collided with its vehicle, and its driver's departure from his course of employment on the occasion of the accident.

The appellant operated a fleet of vehicles transporting automobiles. The one involved consisted of a tractor drawing a trailer, which is a large double-decked machine capable of carrying four automobiles. The unit was 50 feet long. When the accident happened, this gigantic machine was in the process of being backed into a private driveway on the south side of U. S. Highway No. 23, in Greenup County, about seven o'clock in the evening of March 3, 1952. In doing so, the driver, Norman Warner, had to go on his left side of the road and to "jack-knife" the tractor in order to make the turn. At the time of the collision all, or practically all, of the trailer was off the paving of the road, but the tractor extended diagonally across the center line to within about three feet of the edge of the other side. No lights were burning on the trailer. The headlights of the tractor were shining diagonally across the road in a northwesterly direction. Two cab lights were also turned on. The night was rainy and misty, making visibility poor.

Within 120 feet, or closer, to the east an automobile had been parked on the north side of the road with one-half or more of its width on the paving. It had no lights burning. Warner's father had put it there and stationed himself on the west side of the transport vehicle to flag down eastbound traffic, which would have been in the south lane of the highway. But west-bound traffic was not being protected or warned in any way, and the view was partially obstructed by the parked automobile.

Raymond Wireman, twenty years of age, and another young man came down the highway traveling west, at a speed which the substantial evidence shows was not over 40 to 45 mph, which was within the Statutory limits. The highway was straight and level. The evidence of the two young men is that Raymond was looking ahead and saw the parked car but did not then see the transport vehicle across the highway because his view was obstructed by the car. As he went around it, the big vehicle across the road suddenly loomed up before him. He had slowed down in passing the car; and when he saw the transport, he put on his brakes and turned to the right but struck the tractor just behind its cab. This indicates Wireman's car was then about the center of the highway. The short space between the parked car and the transport allowed but little room to get over completely on the right side, but it would have been of no avail for that side was obstructed also.

The status of the defendant's vehicle was not the same as that of a car stopped or parked on the road within the meaning of the statutes relating to such position. Robinson Transfer Co. v. Turner, 244 Ky. 181, 50 S.W.2d 546; Blashfield, Cyc. of Auto Law, Sec. 1204. The driver was backing a cumbersome machine into a narrow space, which necessitated briefly blocking the highway. It would seem to make no difference whether at the instant of the collision it was momentarily at rest or

actually moving. While the driver had the right to take as much of the road as he deemed necessary to make the turn into the driveway, he was bound to exercise reasonable and ordinary care commensurate with the risk of danger to the traveling public which attended the course he was about to take or was taking. He must have had due regard to the safety of other travelers and, of course, not have violated any of the statutory regulations. KRS 189.290, 189.300, 189.340, 189.380. Other travelers had the right to expect adequate notice or warning of the presence of the vehicle, irrespective of the reason for stopping or being there, whether by the use of lights, signals, guards or other practical means. Freeman v. W. T. Sistrunk & Co., 312 Ky. 438, 227 S.W.2d 979; Kentucky Transport Corp. v. Simcox, 282 Ky. 50, 137 S.W.2d 708; 60 C.J.S., Motor Vehicles, § 329. We think there is a material difference in a situation like this and a railroad train on a crossing. Signals are provided for such crossing and a motorist may anticipate a train at any time. The question of the defendant's negligence was clearly one for the jury. It was so held in the similar case of Herring v. Holicer Gas Co., La.App., 22 So.2d 868.

■ Contributory negligence. In determining the question of negligence of a person in failing to observe the presence of a standing or moving vehicle in time to stop or avoid it in safety, no hard or fast rule can be laid down, and the surrounding conditions and circumstances of the particular case must be considered. 60 C.J.S., Motor Vehicles, § 338b; De Buyser v. Walden, Ky., 255 S.W.2d 616. It is true a motorist is chargeable with seeing what is ordinarily within the range of his vision, and when traveling at night or when visibility is obscure, if he finds it difficult to see objects in front of him, he must exercise greater care than he would otherwise. But the rule cannot be too strictly applied in a case where an obstruction appears suddenly and immediately in front of him. The character, appearance and visibility of the object must be taken into consideration.

■ In the present case the driver of the automobile had no reason to expect to find this mechanical behemoth in the middle of and blocking the highway, poorly lighted with its headlight rays projected off the road away from his approach, unguarded and just beyond an illegally parked car which he had been able to avoid by swerving to his left. A motorist has the right to assume the road is reasonably safe for ordinary travel and does not have to anticipate an extraordinary hazard such as this was.

■ The issue of contributory negligence was for the jury's decision. McLellan v. Threlkeld, 279 Ky. 114, 129 S.W.2d 977; De Buyser v. Walden, Ky., 255 S.W.2d 616.

■■ We consider the question of departure from employment as relieving the appellant of liability. Warner, the driver of the vehicle, was a regular employee of the company, engaged in transporting automobiles from Detroit, Michigan, to points in North Carolina. He made the trip weekly. The route from Detroit was through Ohio to Portsmouth. Two routes of equal distance were available to get on U. S. Highway No. 60, which was traveled eastwardly to Beckley, West Virginia, where another road was taken to the south. The driver could go up U. S. No. 52 on the north side of the Ohio River and cross above Ironton to Ashland, Kentucky, or could cross at Huntington, West Virginia. Or he could cross the river at Portsmouth, Ohio, and go up the river on the Kentucky side on U. S. Highway No. 23. Warner, the driver of the transport, lived on Highway No. 23, not far from the river crossing from Portsmouth. He customarily crossed at that point and spent the night at his home before proceeding with his load. The company's dispatcher confirmed Warner's testimony that no particular route had ever been specified, and that he had not violated instructions, but he denied knowing Warner's custom to use the Kentucky route or to stop at his home. However, on the evening before the accident, Warner had stopped there on a return from a trip to North Carolina, and the dispatcher reached him there by tele-

phone—which indicates his expectation to find him there—and directed him to leave his empty trailer, go in the tractor to Chillicothe, Ohio, and pick up a loaded trailer whose tractor had become disabled at that point, and take the cars to North Carolina. Warner was on his way with this load when he stopped at his home for the night.

The vehicle on this occasion was certainly not being used by the employee for his own business or pleasure. He had not turned aside from his employer's business. He had not disregarded any instructions, for no route to be taken had ever been designated by his superiors. There was no deviation, let alone a departure, from a customary route, nor any excursion of the employee's own. The dispatcher had expressly directed the driver to leave his empty trailer at his home and go for the loaded one at Chillicothe, 46 miles due north.

The burden was upon the defendant to overcome the presumption of responsible agency. Higgans v. Deskins, Ky., 263 S.W. 2d 108. The facts do not overcome that presumption. On the contrary, we think they show affirmatively and as a matter of law that the driver was within the scope of his employment at the time of the accident. Wathen v. Mackey, 300 Ky. 115, 187 S.W. 2d 1000; 5 Am.Jur., Automobiles, Sec. 376; 60 C.J.S., Motor Vehicles, § 437.

■ The given instructions stated the driver's duties as they might have been in "stopping and parking" or leaving the vehicle "standing" on the traveled portion of the highway. Indeed, the instruction is susceptible of placing the absolute duty of not stopping on the road, irrespective of any reason, but if it did stop, the operator's duty was to give warning to traffic "by displaying flares, lanterns, lights or other signals which were sufficient to give such warning." This latter clause is usually that required where an automobile is disabled and cannot be readily moved and has no lights on it sufficient to give notice of its presence on the road. It seems to us the basis for this instruction is not the proper one. The vehicle was not parked or left standing on the highway, nor was it disabled. It was in operation.

The present case is very much like Robinson Transfer Co. v. Turner, supra, 244 Ky. 181, 50 S.W.2d 546. Late at night the driver of a similar automobile transport vehicle, in order to make a turn at a street intersection in Russellville, swung around and over to the left of the center of the south side of the street and stopped there diagonally across the street, headed northwestwardly, with the rear end beyond the center of the street, completely blocking the left lane and partially obstructing the right side of the street, while a man accompanying the driver walked across the street to look at a traffic sign in order to find the way out of the city. While the vehicle was in that position, two young men driving westwardly on the right-hand side of the street could not or did not see the vehicle until within 15 or 25 feet of it. The driver applied his brakes and undertook to go around the vehicle but collided with the protruding end of the trailer. The headlights of the machine were burning but there was no light on the rear of it. This was the evidence for the plaintiff in an action against the vehicle's owner. We held inapplicable Sec. 2739g–42, Ky.Statutes (now KRS 189.330), relating to the duties of a driver turning a motor vehicle to keep to the center of the street intersection because the machine was not in the act of turning at the time of the collision but was momentarily stopped. We held also that the statute relating to stopping a car on the highway did not apply to a city street, but that the statute (then Secs. 2739g–24 and 2739g–30), now KRS 189.030 et seq., relating to the lights on a car while "in operation", did apply.

The instructions given in the Robinson case were found to be erroneous. We expressed the opinion that upon another trial the instructions should be confined to the specific duties set forth in the applicable statutes to a vehicle in operation and the common law duty to exercise ordinary care. And, further, held that the plaintiff would be entitled to an instruction under the emergency rule.

We are of opinion, therefore, that the instruction defining the defendant's duties is erroneous, and that the question of its driver's negligence should have been submitted, in general, upon a violation of a duty not to go beyond the center of the highway or obstruct the road in backing the vehicle into the driveway unless and until it was reasonably safe for him to do so and to have reasonably protected the traffic on the highway.

We find no error in the introduction of evidence.

The questions as to the damages and the manner in which the verdicts were reached need not be considered.

The judgments are reversed for the error in the instruction.

CAMMACK, J., dissents because he does not regard the instruction as prejudicial.